EDWARD R. BRUSH, PETITIONER, v. ERWIN B. HOCK,
COMMISSIONER OF THE STATE DEPARTMENT OF
ALCOHOLIC BEVERAGE CONTROL, ET AL., DEFEND-
ANTS.

---

FRANCIS R. ORMOND, PETITIONER, v. ERWIN B. HOCK,
COMMISSIONER OF THE STATE DEPARTMENT OF
ALCOHOLIC BEVERAGE CONTROL, ET AL., DEFEND-
ANTS.

Argued May 6, 1948—Decided June 9, 1948.

---

Before Justices DONGES, COLIE and EASTWOOD.

For the petitioners, *Harold Simandl*.

For the defendant Erwin B. Hock, Commissioner of the
State Department of Alcoholic Beverage Control, *Walter D.
Van Riper*, Attorney-General (by *Samuel B. Helfand*,
Deputy Attorney-General).

For the defendant Bayshore Tavern Association, *William
C. Egan* (by *A. Nathan Cowen*).

For the defendant Mayor and Council of the Borough of
Highlands, *John M. Pillsbury*.

The opinion of the court was delivered by

EASTWOOD, J. By similar orders made on September 25th, 1947, the Commissioner of the State Department of Alcoholic Beverage Control revoked the plenary retail consumption licenses issued to the petitioners by the defendant Borough Council on May 12th, 1947, for the 1946-1947 term and canceled renewals thereof for the 1947-1948 term, issued on June 17th, 1947. His action in so doing forms the basis of the present applications for review.

On May 12th, 1947, the Borough Council issued four plenary retail consumption licenses, two of which were issued to the petitioners, Edward R. Brush and Francis R. Ormond. Renewals of the licenses were issued effective on July 1st, 1947. As the basis of his revocatory action the Commissioner assigned the fact that:

"A consideration of the record clearly indicated, as this defendant found, that when issuing the licenses to these petitioners, 'the Borough Council did not give any consideration to the question of public need for additional plenary retail consumption licenses in the community' * * *, and that the Borough Council had 'abused its discretion.' * *. *"

At the time the licenses in question were issued by the municipal authority it appears that the population of the Borough of Highlands, according to the last federal census, was 2,076, and that at that time, there had already been issued 28 such licenses, or one license to every 74 persons. If nothing further had been pleaded in extenuation of the action of the issuing authority we would conclude that the needs of the municipality, in so far as the availability and adequacy of drinking facilities were concerned, were more than amply provided for, and that the Commissioner had properly exercised his authority in making the revocations complained of. However, petitioners argue that the Borough of Highlands is a summer resort and in that season the population is so greatly increased that the issuance of their licenses was justified. It is said on their behalf that during the summer season the population could be conservatively estimated at 15,000 persons. Be that as it may, our review of the facts leads us to concur with the finding of the Commissioner that:

"Even if due allowance is made for the increase in the summer population, the issuance of any plenary retail consumption licenses in excess of twenty-eight would appear to be excessive and an abuse of the discretionary power conferred upon the local issuing authority by *R. S.* 33:1–19; *R. S.* 33:1–24." It was testified that the petitioners were veterans of the last war, and in the words of Borough Councilman Rast, at the public hearing concerning the issuance of the licenses, "* * * there were a hundred people around the room, all of them wanted to give a license to these veterans, feeling how they fought in this war. * * * the only objection was the Reverend and one of the tavern owners, and there was I'd say a hundred to two for the licenses, * * *. I believe that is what made them grant these licenses to these people." It seems to us, and we so hold, that the licenses were granted more on the basis of expediency rather than on the question of a public need for additional licenses in the community. It appears that there were three other licensed premises in the immediate neighborhood of the Brush premises, and that there were at least four other licensed premises within a few blocks of the Ormond premises. It is not conceivable to us, even assuming an increased summer population, that the needs of the community were inadequately provided for by the licensed premises then in existence and serving the public.

There is nothing in the case that causes us to depart from the decision of the Court of Errors and Appeals in the similar case of *Hudson Bergen County Retail Liquor Stores Association et al.* v. *Board of Commissioners of Hoboken et al.*, 135 *N. J. L.* 502; 52 *Atl. Rep.* (*2d*) 668, opinion by Chief Justice Case. The cited case is the final authority in this state for the proposition that the Commissioner has authority to cancel licenses issued by local issuing authorities when not warranted by public need and necessity. It seems to us that the facts as revealed by the record here show a total lack of any public need or necessity for the issuance of additional licenses. In speaking for the Court of Errors and Appeals in *Hudson Bergen County, &c., Association et al.* v. *Hoboken et al., supra,* Chief Justice Case summarized

the authority of the Commissioner in the following succinct language:

"The Commissioner is himself, with respect to numerous grades of licenses, the issuing authority (*R. S.* 33 :1–18). As to other licenses, the appropriate municipal body, referred to in the statute as the 'other issuing authority' (*R. S.* 33 :1–19), initially passes on the application, and from the determination of that body, whether to grant or to refuse, there is an appeal to the Commissioner. Not only has the Commissioner authority in the issuing of licenses, original as to some, appellate as to others; he is burdened with the duty of administering and enforcing the statute and of taking all 'acts, procedures and methods designed to insure the fair, impartial, stringent and comprehensive administration' of the statute (*R. S.* 33 :1–23) ; he is given authority to make both general and special rules and regulations for the proper regulation and control of the manufacture, sale and distribution of alcoholic beverages generally and with specific reference to many enumerated subjects, *inter alia* 'unfair competition' and 'instructions for municipalities and municipal boards' (*R. S.* 33 :1–39) ; he is directed to 'supervise the manufacture, distribution and sale of alcoholic beverages in such a manner as to promote temperance and eliminate the racketeer and bootlegger' (*R. S.* 33 :1–3) ; he is authorized, after the hearing on an appeal, 'to make all finding, rulings, decisions and orders as may be right and proper and consonant with the spirit of this chapter' (*R. S.* 33 :1–38). Finally, we have the legislative mandate that 'This chapter is intended to be remedial of abuses inherent in liquor traffic and shall be liberally construed' (*R. S.* 33 :1–73)."

We hold that the facts in the matter before us are clearly such as fall within the regulatory and supervisory powers of the Commissioner.

Objection is made that the Commissioner was not consistent in that, while revoking petitioners' licenses, he nevertheless permitted the license issued to one Jean Ciroalo, trading as Seaside Hotel, to remain in effect, and that thereby the petitioners were denied equal privileges. The Commissioner found that the Borough Council were in favor of

issuing licenses for hotels and that they were satisfied that Ciroalo operated a *bona fide* hotel, and that the nearest licensed hotel was located approximately one-half mile distant. A review of the evidence below reveals that the petitioners here did not conduct *bona fide* hotels, and, therefore, the Ciroalo determination is not applicable.

We are urged to allow the writ on the grounds that the cancellation of the renewal licenses, commencing July 1st, 1947, denied the petitioners due process and equal protection of law. We think not. The revocation of the licenses originally issued on May 12th, 1947, operated so as to constitute the so-called renewal licenses of June 17th, 1947, actually new licenses. As such it was not within the powers of the issuing authority, since such action falls within the condemnatory provisions of *Pamph. L.* 1947, *ch.* 94; *R. S.* 33:1–12.13, *et seq.*, effective on May 15th, 1947, three days after the issuance of the so-called renewal licenses to the petitioners. *R. S.* 33:1–12.14, which is applicable to the facts before us, reads:

"* * * no new plenary retail consumption—license shall be issued in a municipality unless and until the combined total number of such licenses existing in the municipality is fewer than one for each one thousand of its population as shown by the last then preceding Federal census; * * *."

It requires no labored consideration to determine that since the ratio of licenses to population was at that time one plenary retail consumption license for each 74 persons, the attempted issuance of new licenses, under the guise of so-called renewal licenses was clearly prohibited by the statute.

We have considered all of the other arguments advanced by the petitioners in support of their contentions and find them to be without merit.

Writs of *certiorari* applied for are denied, with costs.