33 N.J. Super. 61 (1954)
109 A.2d 444
McFADDEN'S LOUNGE, INC., APPELLANT,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1954.
Decided November 12, 1954.
*62 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Harry Kay argued the cause for appellant.
Mr. Samuel B. Helfand, Deputy Attorney General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey).
The opinion of the court was delivered by JAYNE, J.A.D.
Experience has firmly established that taverns where wine, men, women, and song centralize should be conducted with circumspect respectability. Such is a reasonable and justifiable demand of our social and moral welfare intelligently to be recognized by our licensed tavern proprietors in the maintenance and continuation of their individualized privilege and concession. Broadly stated, the present appeal is addressed to the propriety of the disciplinary action occasioned by an alleged infraction of that obligation.
A plenary retail consumption license was issued to the appellant by the Municipal Board of Alcoholic Beverage Control of the City of Newark which privilege was utilized at *63 a night club conducted by the appellant at Nos. 88-94 Halstead Street.
On November 30, 1949 the then Director of the State A.B.C. caused a warning to be dispatched to appellant, excerpts from which are here quoted:
"Gentlemen:
Agents of this Division report that recently, while making undercover checks at your tavern, they witnessed a team of two men billed and introduced as the `McFadden Boys, Bill & Tom' perform with music, songs and `side remarks' for the entertainment of your patrons. While the music and songs, so called popular numbers, appear to have been kept to the scripts, many of the `side remarks' were questionable and highly suggestive. They went well beyond any humor and bordered dangerously close to be classified as `smutty,' and as such possibly to be deemed to constitute lewdness and immoral activities on the licensed premises.

* * * * * * * *
However, you are specifically warned that you must clean up the entertainment at your licensed premises. Should any future violation of like character be found at your tavern, warranting proceedings, the present warning may well be taken into account in determining proper penalty.
Please let us have, immediately and without fail, a letter signed personally by your president or vice-president acknowledging receipt of this warning and giving your pledge of future compliance with all the liquor laws and regulations."
The president of the licensee acknowledged the receipt of the Director's communication and promptly replied:
"I am President of McFaddens Lounge Inc. and one of the McFadden Brothers on whom the agents reported. My brother Bill and I have been entertaining in and around Essex County for the past fifteen years and have never been aware that our brand of humor was offensive to anyone. On the contrary, through our long experience in show business, we feel that our entertainment is good clean fun for everyone.
However, if any of the material we had been doing was construed by your agents as bordering on being classified as `smutty' and as such placing our license in jeopardy, rest assured that it can be dispensed with immediately without in any way impairing the entertainment value of the act."
Both the warning and the responsive assurance seem to have lost their potentiality in the passage of time, for on *64 September 2, 1953 the following accusation was made against the appellant by the Director of the Division of Alcoholic Beverage Control:
"On Friday night, August 21, 1953 and early Saturday morning, August 22, 1953 and on Friday night, August 28, 1953 and early Saturday morning, August 29, 1953, you allowed, permitted and suffered lewdness and immoral activity in and upon your licensed premises, in that male entertainers sang songs, recited stories and uttered words and phrases having lewd, lascivious, indecent, filthy, disgusting and suggestive import and meaning; in violation of Rule 5 of State Regulations No. 20."
The portion of Rule 5 of State Regulation No. 20 of present pertinency reads:
"No licensee shall allow, permit or suffer in or upon the licensed premises any lewdness, immoral activity, or foul, filthy or obscene language or conduct, * * *."
The promulgation of the foregoing rule by the Division of A.B.C. has been judicially regarded to be within the orbit of the authority conferred upon the administrative agency by N.J.S.A. 33:1-39, as amended. In re Schneider, 12 N.J. Super. 449 (App. Div. 1951); Greenbrier, Inc., v. Hock, 14 N.J. Super. 39 (App. Div. 1951), certification denied, 7 N.J. 581 (1951); In re Larsen, 17 N.J. Super. 564 (App. Div. 1952); In re 17 Club, Inc., 26 N.J. Super. 43 (App. Div. 1953).
Following a hearing the then Director of the Division concluded that the present appellant had disobeyed the designated rule and ordered the suspension of the license for a period of 25 days from February 9, 1954 to March 6, 1954. Compliance with the order has been deferred until the determination of the present appeal.
It is not inappropriate briefly to insert here the information that pending this appeal the decision of the Supreme Court in Mazza v. Cavicchia, 15 N.J. 498 (1954) was rendered, and although this appeal was retained, the proceedings under review were remanded to the Division of the A.B.C. to be further pursued in conformity with the decision in the *65 Mazza case. Such was done, and the present Director of the Division arrived at the same conclusion as that of his predecessor and likewise ordered the suspension of the appellant's license for a period of 25 days. We have no reason to doubt that he devoted his eye and mind to the transcription of the evidence adduced at the prior hearing. The former procedural criticisms were evidently erased.
The appellant's surviving and predominant criticism of the Director's decision is that the application of Rule 5 to the factual circumstances constitutes an arbitrary abridgment of the constitutional rights of the implicated parties to the freedom of speech.
As an initial premise it is acknowledged that the paraphrased lyrics of the songs and the stories as reported were actually delivered on the designated occasions by the entertainers at the tavern with the knowledge and acquiescence of the officers of the licensee and were composed or selected and communicated for the titillatory amusement and entertainment of the patrons, and not for any purpose of academic indoctrination.
Manifestly the jollity and merriment sought to be diffused by the songs and stories inhered, it is supposed, in their implied suggestiveness of illicit sexual relations. It requires only ordinary frankness to state that the compositions exemplify a crude and smutty exercise in semantics  decent words procreating indecent ideas, decorous language utilized to impart indecorous concepts.
The propriety of such deliverances is perhaps basically estimated in view of the time, place, the appropriate conventional standards, and the object, purpose, and effect of their theme. True, fashions in both language and dress have changed over the passing years in the field of entertainment in their contemporaneous and conformable accommodation to the mental and visual breadth and tempo of modern life. The spicy exhibition apparently tickles the box office. Endeavors to moderate or to resist the elevation of the rapturous and erotic flavor of such entertainments commonly encounter the solemnity of constitutional objections.
*66 Certainly no less than a ton of literature is reasonably available on the subject of freedom of speech and its transilient censorship. Today redundancy in the further discussion of the subject is practically inescapable. There is no justifiable excuse for it here, other than to reiterate that the right of free speech protected by the First Amendment and mirrored in the Fourteenth of our Federal Constitution is not absolute at all times and under all circumstances, and to disclose significantly that we are here only concerned with the enforcible applicability of a restrictive and disciplinary rule governing the conduct of those who have been granted the special privilege of vending alcoholic beverages at a designated location.
The stringency of such a regulation must be measured in its relation to the reasonably apprehended evils of the trade. Its infraction must be determined from the factual circumstances of the particular occurrence or course of conduct.
Here the record supplies us with the lyrics of the songs and the language of the stories. The pivotal question is, did they have such a "lewd, lascivious, indecent, filthy, disgusting and suggestive import and meaning" as charged, as to constitute "filthy or obscene language or conduct" within the explicit or connotative signification of Rule 5 of the State Regulation to which specific reference has hereinbefore been made?
No inconsiderable portion of the weight of the literature anent freedom of speech has been furnished by dissertations on the tests of alleged obscene language and other accusations of acts of obscenity. Many former definitions and analyses have been adulterated, modernized, or supplanted as the tolerance of the pudibund has enlarged and the temperatures of the puritanical sin hunters have lowered.
An acquaintance with pertinent decisional adjudications caused Judge Bok in his admirable opinion in Commonwealth v. Gordon, 66 Pa. Dist. & Co. 101, 132 (1949) to observe that:
"It has been said that the matter charged, to be obscene, must `suggest impure or libidinous thoughts,' must `invite to lewd and *67 lascivious practices and conduct,' must `be offensive to chastity,' must `incite dissolute acts,' must `create a desire for gratification of animal passions,' must `encourage unlawful indulgences of lust,' must `attempt to satisfy the morbid appetite of the salacious,' must `pander to the prurient taste.'"
In our home forums we have recently heard Mr. Justice William Brennan say "the question is whether the dominant note of the presentation is erotic allurement `tending to excite lustful and lecherous desire,' dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but `to counsel or invite to vice or voluptuousness.'" Adams Theatre Co. v. Keenan, 12 N.J. 267 (1953).
We have noticed Judge Goldmann quote Judge Bok's derivation that from all the cases the modern rule is that obscenity is measured by the effective erotic allurement, and that the erotic allurement is measured by whether it is sexually impure, i.e., pornographic, "dirt for dirt's sake," a calculated incitement to sexual desire. Bantam Books, Inc., v. Melko, 25 N.J. Super. 292, 316 (Ch. Div. 1953).
We are informed that the patrons of the appellant's tavern are not impressionable and easily impassionable youths, but adult males and females between the ages of 25 and 35 years of age. Nevertheless we would suppose that persons between those ages continue to be in their "sexteens."
And then we are importuned on behalf of the appellant to recognize from common knowledge in contrast the many sensually suggestive songs that are currently communicated to the public with immunity in stage performances and by radio and television. Mr. Justice Jacobs, then presiding in the Appellate Division, answered that the test for obscenity is not a comparison with other publications or deliverances. State v. Weitershausen, 11 N.J. Super. 487, 492 (App. Div. 1951), certification denied, 7 N.J. 79 (1951); see, Commonwealth v. Isenstadt, 318 Mass. 543, 62 N.E.2d 840 (Sup. Jud. Ct. 1945); Commonwealth v. Donaducy, 167 Pa. Super. 611, 76 A.2d 440 (1950).
It seems both prudent and proper for us to consider the natural and probable tendency of these songs and stories to *68 arouse sex impulses in the particular and in some respects exceptional environment normally existing in the exhilarated gaiety of a licensed tavern. Certainly the consumption of alcohol itself promotes in some degree and in the case of many a relaxation of concern in proprieties and a transient indulgence in regretful indiscretions at such privileged resorts. Such places, if not otherwise tilled, become fertile pastures in which risque songs and stories sprout, grow to the height of vulgarity and ultimately to that of obscenity if the appetites of the patrons are thereby satiated.
Alluding to common knowledge, does not everyone know that the allurement to the sexual propensities is the only inspirational and receptive attraction toward that type of entertainment? Neither the purpose nor the effect is intended to be edifying but rather jokingly and insidiously to electrify the susceptive sexual impulses and emotions.
It must be realized that we are not presently concerned with the preliminary censorship of a book or of an oral address or lecture. Our immediate interest and attention is confined to the disciplinary action taken against the licensee of a public tavern, whose privileges may lawfully be tightly restricted to limit to the utmost the evils of the trade. Vide, Paul v. Gloucester County, 50 N.J.L. 585 (E. & A. 1888); Kravis v. Hock, 135 N.J.L. 259 (Sup. Ct. 1947), reversed on other grounds, 136 N.J.L. 161 (E. & A. 1947); Hudson Bergen County Retail Liquor Stores Ass'n v. Hoboken, 135 N.J.L. 502 (E. & A. 1947); In re Schneider, supra.
We are accordingly thus guided in the direction of our appraisal of the songs and stories, the nature, characteristics, and effect of which we are asked to grade in the particular surroundings in which they were projected. While we may frankly concede that they were not extremely saturated with revolting filth, dirtiness, and obscenity, they were, as my associate Judge Francis defined obscenity in his charge to the jury in State v. Weitershausen, supra, "offensive to the chastity of the mind, to the delicacy and purity of thought, something suggestive of lustfulness, lasciviousness and sensuality" *69 and "would tend to deprave the morals * * * by suggesting lewd thoughts and exciting sensual desires."
Not alone the general public but liquor licensees themselves should realize that the Alcoholic Beverage Control statute and the rules promulgated by the administrative representative of the Legislature are designed to guard the permissive sale of intoxicating beverages against the broad variety of abuses which if consciously condoned or ignored will inevitably again outlaw the presently sanctioned pursuit.
The power of the Director of the Division of Alcoholic Beverage Control to restrain such exhibitions in a licensed tavern under his evident interpretation of Rule 5 does not seem to us to be reasonably questionable.
Our appellate function does not envelop the authority optionally or arbitrarily to encroach upon the supervisory province entrusted to the Director by the Legislature.
The decision of the Director here impugned is affirmed.