205 N.J. Super. 77 (1985)
500 A.2d 43
IN THE MATTER OF G. & J.K. ENTERPRISES, INC. T/A THE RENDEZVOUS LOUNGE, RESPONDENT-APPELLANT,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, PETITIONER-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1985.
Decided October 25, 1985.
*78 Before Judges FURMAN and PETRELLA.
Edward S. Bloch argued the cause for respondent-appellant.
Melissa Baggitt, Deputy Attorney General, argued the cause for petitioner-respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
The opinion of the court was delivered by PETRELLA, J.A.D.
These three consolidated appeals arise from a final order of the Director of the Division of Alcoholic Beverage Control suspending the plenary alcoholic beverage license of G. & J.K. Enterprises t/a The Rendezvous Lounge (Licensee) for two periods of 60 days and an additional period of 120 days based *79 on three separate charges of violations of the Division's regulations. The offenses involved all related to determinations that on four separate dates Licensee had suffered or permitted lewd or immoral activity in or upon the licensed premises in violation of the applicable regulations and that the Licensee failed to include certain "exotic dancers" on his list of employees.
Licensee, which conducts its business at 601 Washington Road, South Amboy, was charged in a January 18, 1983 notice with violating N.J.A.C. 13:2-23.6 on November 23, 1982 by permitting lewd and immoral activity upon the licensed premises in the performances by females commonly referred to as topless dancers, and violating N.J.A.C. 13:2-23.13(a)(3) by failing to list the names and addresses of those dancers as current employees on the licensed premises.
While those charges were pending an additional notice and charges dated May 19, 1983, were served on Licensee alleging that on February 14, 1983 similar violations occurred. These charges were consolidated and heard as a contested case by an Administrative Law Judge (ALJ).
We find it unnecessary to fully detail the somewhat graphic testimony elicited at the hearings of the activities engaged in by the female dancers who on each occasion danced and performed with their breasts, and sometimes parts of other private areas exposed. There was testimony in the record which supports the ALJ's findings that in the November 23, 1982 incident two Division undercover agents observed two females dancing with the top portions of their outfits removed and their breasts exposed to the patrons. There was testimony that the first dancer, while topless, left the stage several times during her performance to accept gratuities from patrons. There was testimony that the second dancer permitted a male patron to remove her silver jeans.[1] That dancer then removed the top of *80 her outfit and exposed her breasts to the patrons. The investigator also testified that while on the dance stage, this dancer pulled down the bottom portion of her bikini and exposed her "anal" area to the patrons. The activities of the evening occurred while Gregory Kaye, a principal of Licensee, was seated at the bar and did nothing to discourage or stop the performances.
The Division's inspector testified to having observed somewhat similar occurrences by two different female dancers on February 14, 1982. One of the dancers engaged in considerable self-manipulation of her breasts, as well as lying down on a blanket on the stage and spreading her legs and massaging her breasts. It was essentially undisputed that on both dates none of the dancers' names were on the employee list prescribed under the previously cited regulations.
In his initial decision the ALJ found that Licensee had violated the regulations as charged. The Director accepted the ALJ's initial decision and increased the proposed penalty from 30 to 60 days. Licensee appealed and obtained a stay pending disposition of the appeal.
During the pendency of that appeal Licensee was served with a March 28, 1984 notice and charges regarding incidents of permitting or suffering performances of lewd or immoral activity in or upon the licensed premises on January 7, 1984. There was testimony that on that date two different female performers danced with their breasts exposed, and that one of the dancers performed with what was described and found to be a virtually transparent bikini bottom. The ALJ found that Licensee had violated the regulations. He recommended a 60-day license suspension. The Director accepted the ALJ's findings and recommendations and imposed a 60-day suspension. Licensee appealed and obtained a stay of its license suspension and a consolidation of the then pending appeal.
The third of the consolidated appeals arises from July 3, 1984 charges that on May 8, 1984 Licensee permitted or suffered *81 lewd or immoral activity upon the licensed premises and conducted the licensed business without keeping on the premises a complete list of employees. A hearing was held on these charges. The ALJ found that on May 8, 1984, two female performers separately performed with their breasts exposed while wearing bikini bottoms or G-strings, and collected gratuities from patrons while so attired. The names of the dancers were not on the employee list. On May 6, 1985 the ALJ sustained all the charges and recommended a 120-day license suspension. The Director accepted the ALJ's findings and conclusions and ordered a 120-day license suspension. Licensee filed a third notice of appeal, and obtained a stay of the suspension as well as consolidation with the previously consolidated appeals.
In these consolidated appeals Licensee argues that: (1) N.J.A.C. 13:2-23.6 is constitutionally defective; (2) the Director applied no standard of decency in finding that regulation to have been violated, and therefore, he was arbitrary, capricious and unreasonable; (3) the entertainers were independent contractors, not employees, and hence Licensee did not violate N.J.A.C. 13:2-23.13(a)(3); and (4) the penalties imposed were an abuse of discretion.
Licensee conceded at oral argument that it was not arguing that First Amendment rights protected it under the Alcoholic Beverage Control regulations, acknowledging and citing New York State Liquor Authority v. Bellanca, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981). Rather, Licensee's constitutional arguments are based on an alleged lack of due process arising from an asserted indefiniteness of the terms "lewdness" and "immoral" activity in the regulations.
N.J.A.C. 13:2-23.6 provides in pertinent part:
(a) No licensee shall engage in or allow, permit or suffer in or upon the licensed premises: (1) any lewdness or immoral activity; ....
Licensee contends that by failing to adequately define "lewdness" and "immoral activity," N.J.A.C. 13:2-23.6 thus lacks a *82 standard of decency. This indefiniteness, according to Licensee, makes the regulation violative of its due process rights, thereby subjecting Licensee to arbitrary and capricious application of the regulation and to punishment in "an ex post facto manner." Licensee concedes the Director's authority to promulgate the regulation under the broad authority given him in N.J.S.A. 33:1-39.
We noted in In re Club "D" Lane, Inc., 112 N.J. Super. 577, 579 (App.Div. 1971):
A license to sell intoxicating liquor is not a contract nor is it a property right. Rather, it is a temporary permit or privilege to pursue an occupation which is otherwise illegal. Since it is a business attended with danger to the community, it may be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils. Mazza v. Cavicchia, 15 N.J. 498, 505 (1954).
The regulation and sale of alcoholic beverages, requiring as it does intense regulation, is considered on a narrower basis than other commercial enterprises. See e.g., Davis v. New Town Tavern, 37 N.J. Super. 376, 378 (App.Div. 1955); In re Club "D" Lane, Inc., supra, 112 N.J. Super. at 579. See also In re Boardwalk Regency Corp. Casino License, 90 N.J. 361 (1982), appeal dismissed, 459 U.S. 1981, 103 S.Ct. 562, 74 L.Ed.2d 927 (1982) (regulation of casinos). Although we have essentially only outlined the graphic testimony of what occurred on the Licensee's premises as found by the ALJ and the Director, Licensee's claim that the regulation is indefinite rings hollow. The terms "lewdness" or "immoral activity" in N.J.A.C. 13:2-23.6(a)(1) were also used in the predecessor regulation.[2]
It was observed by Judge Goldmann in In re Olympic, Inc., 49 N.J. Super. 299, 306 (App.Div. 1958), certif. den. 27 N.J. 279 (1958):
Our courts have long recognized the sui generis character of the liquor trade, and the Legislature has from earliest times treated that subject in an exceptional manner. Mazza v. Cavicchia, above, 15 N.J. at page 505. As was there pointed out, the right to regulate the sale of intoxicating liquors is within the *83 police power and practically without limit, and that power has uniformly been accorded liberal judicial support.
This court has within the past few years had occasion to construe and apply Rule 5 of State Regulation No. 20. [citations omitted] The liquor business must be carefully supervised and tightly restrained in the public interest, in accordance with the manifest design of the Alcoholic Beverage Act.
We referred to the purpose of the former regulation in In re Schneider, 12 N.J. Super. 449, 458 (App.Div. 1951) where we said:
The object manifestly inherent in the rule with which we are here concerned [Regulation No. 20, Rule 5] is primarily to discourage and prevent not only lewdness, fornication, prostitution, but all forms of licentious practices and immoral indecency on the licensed premises. The primary intent of the regulation is to suppress the inception of any immoral activity, not to withhold disciplinary action until the actual consummation of the apprehended evil.
In our view these expressions of our court apply equally to the current regulations. If Licensee had any question about what "lewd" meant, not only could his attorney have advised him as to our prior holdings concerning the very same word, but a dictionary would have disclosed it to be defined as, among other things:
... suggestive of or tending to moral looseness: inciting to sensual desire or imagination. [Webster's Third New International Dictionary (1971) at 1301].
"Lewdness" is defined as: "... the quality or state of being lewd." Id. Considered in light of the principle that the standard for "lewdness or immorality" for the purpose of alcoholic beverage control, may be determined on a distinctly narrower basis than the regulation of other enterprises, Davis v. New Town Tavern, supra, 37 N.J. Super. at 378, the challenged regulation is neither vague nor ambiguous. There is no constitutional infirmity by virtue of the use of those terms. Lewd and immoral activity has been considered to take place where "the predominant object and natural effect upon the observers-patrons of one portion of the performance was erotic excitation." Davis v. New Town Tavern, supra, 37 N.J. Super. at 377. Our cases have consistently applied a like standard with respect to premises governed by the Alcoholic Beverage Control Commission regulations. See, e.g., In re Club "D" Lane, *84 Inc., supra, 112 N.J. Super. at 579-580 (go-go dancers wearing only transparent bibs and pasties); In re Olympic, Inc., supra, 49 N.J. Super. at 301 (procurement of prostitution); McFadden's Lounge v. Div. of Alcoholic Bev. Control, 33 N.J. Super. 61 (App.Div. 1954) (sexually oriented songs and stories).
We reject Licensee's argument that the appropriate standard for lewd and immoral activity is that contained in N.J.S.A. 2C:14-4[3] which takes into account the effect on the particular observers of the activity. We rejected such a suggestion in In re Club "D" Lane, Inc., supra, 112 N.J. Super. at 579-580, where we said:
We are not here concerned with the censorship of a book, nor with the alleged obscenity of a theatrical performance. `Our immediate interest and attention is confined to the disciplinary action taken against the licensee of a public tavern, whose privileges may lawfully be tightly restricted to limit to the utmost the evils of the trade.' McFadden's Lounge, Inc. v. Div. of Alcoholic Bev. Control, 33 N.J. Super. 61, 68 (App.Div. 1954). Lewdness or immorality for the purpose of alcoholic beverage control may be determinable on a distinctly narrower basis than for the purposes of regulation of commercial entertainment generally. [citations omitted]
Moreover, our cases have consistently held that criminal standards do not apply in the context of administrative law. Butler Oak Tavern v. Div. of Alcoholic Bev. Control, 36 N.J. Super. 512, 518-519 (App.Div. 1955), aff'd 20 N.J. 373 (1956). As we said in Port Reading Builders, Inc. v. Kronenberg, 65 N.J. Super. 196, 199 (App.Div. 1961):
A violation of the Alcoholic Beverage Law is a criminal offense.... Disciplinary proceedings for violations of the rules and regulations [promulgated by the Director of Division of Alcoholic Beverage Control] and for the revocation or suspension of licenses are civil, not criminal, in nature.
The Licensee also argues that the Director improperly relied on various previously decided contested cases to in effect adopt *85 standards to support the Division's regulations, thereby circumventing the Administrative Procedure Act (APA). N.J.S.A. 52:14B-1, et seq. We disagree. N.J.S.A. 52:14B-2(e) defines:
`Administrative Rule' or `rule' [as used in this Act]... means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency.... The term ... does not include . .. agency decisions and findings in contested cases.
Although this section states what a rule is, it also states the obvious, that an agency decision in a contested case is not an administrative rule. However, that does not preclude use of contested case decisions as illustrative of lewd and immoral conduct or as precedent which is available to any licensee. Such cases were not referred to in order to promulgate an administrative rule, but rather to illustrate the standards which have been consistently applied by the courts and the Division in determining what constitutes lewd and immoral conduct under the Division's regulations.
An administrative agency need not adopt rules and standards precisely detailing every broad grant of conferred authority. Mitchell v. Cavicchia, 29 N.J. Super. 11, 14 (App.Div. 1953). Thus, the Division's regulations need not specify what specific act or acts would constitute lewd or immoral behavior in each and every instance.
A review of the evidence demonstrates that Licensee permitted lewdness and immoral activity upon its premises on the occasions for which it was charged with violations. There is no doubt that the activities which occurred were intended to arouse and appeal to sexual desires of Licensee's patrons. This is obvious by the reactions of the patrons. There was testimony that on each of the occasions the actions of the female dancers evoked excitement, cheering, and giving of gratuities by the patrons who encouraged the dancers to reveal themselves further. We repeat what was said in Paterson Tav. & Grill Owners Ass'n, Inc. v. Hawthorne Borough, 108 N.J. Super. 433, 438 (App.Div. 1970), rev'd on other grounds, 57 N.J. 180 (1970):

*86 ... Such so-called `entertainment' is nothing more or less than an appeal to the prurient interest. It is bait to bring customers to the bar and hold them there, for the obvious purpose of increasing the sale of alcoholic beverages.
The record provides ample basis for us to conclude that the Director found by a preponderance of the evidence that the conduct on each of the occasions involved herein was lewd and immoral in violation of N.J.A.C. 13:2-23.6. Butler Oak Tavern v. Div. of Alcoholic Bev. Control, supra, 36 N.J. Super. at 512. The Director's determination is fully supported in the evidence, and in the circumstances is clearly not arbitrary, capricious, unreasonable or violative of any legislative policy expressed or implied in the Alcoholic Beverage Control Act. See N.J.S.A. 33:1-31(g). There is no basis for disturbing his determination.
Licensee next argues that the Director improperly decided that a violation of N.J.A.C. 13:2-23.13(a)(3) had occurred. The contention is that the dancers were not "employees" within the meaning of the regulation requiring maintenance of a list of persons currently employed on the retail premises, but rather were "independent contractors." We find no merit in this argument. Kravis v. Hock, 137 N.J.L. 252, 255 (Sup.Ct. 1948); see Freud v. Davis, 64 N.J. Super. 242, 248 (App.Div. 1960).
N.J.A.C. 13:2-23.13(a)(3) states in pertinent part:
(a) No licensee shall conduct the licensed business unless:
* * * * * * * *
3. A list, in form prescribed by the Director of the Division of Alcoholic Beverage Control, containing the names and addresses of, and required information with respect to, all persons currently employed on retail licensed premises, is kept on the licensed premises.
A licensee may not avoid responsibility for acts performed by persons entertaining the patrons of a licensed premises by attempting to categorize them as either independent contractors or even casual performers. Here the dancers were working in furtherance of the licensed premises. See Paterson Tav. & Grill Owners Ass'n, Inc. v. Hawthorne Borough, supra, 108 N.J. Super. at 433. Indeed they had done so on various occasions, according to the testimony relied on by the Director, and *87 even in the presence of Licensee's principal. The Director properly concluded that Licensee violated N.J.A.C. 13:2-23.13(a)(3).
Finally, we consider Licensee's argument that the penalties imposed constituted an abuse of discretion. Our thorough review of the record, including the determination by the Director of the repetitive nature of Licensee's violations, satisfies us that the 60-day suspensions were permissible, and that there was sufficient basis for the enhanced penalty of a 120-day suspension for the most recent of the violations. The Director reasonably determined that there were "aggravating circumstances as a consequence of respondent's continued disregard for the Division's established rules and regulations."
The decisions and orders of the Director under review in these consolidated appeals are affirmed. The stays previously entered are vacated. The matters are remanded to the Director for the setting of new effective dates for the imposed periods of suspension. We do not retain jurisdiction.
NOTES
[1] Licensee had presented contradictory testimony which was obviously found not credible by either the ALJ or the Director.
[2] Alcoholic Beverage Control Regulation 20, Rule 5.
[3] N.J.S.A. 2C:14-4 provides in pertinent part:

A person commits a disorderly persons offense if he does any flagrantly lewd and offensive act which he knows or reasonably expects is likely to be observed by other nonconsenting persons who would be affronted or alarmed. `Lewd acts' shall include the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person.