**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4932-18
　　　　　　　　A-0226-19

FARRUGGIO'S BRISTOL AND
PHILADELPHIA AUTO
EXPRESS, INC.,

　　　　Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF LABOR AND WORKFORCE
DEVELOPMENT,

　　　　Respondent-Respondent.

_____

IN THE MATTER OF THE
REPEAL OF
N.J.A.C. 12:16-23.2(a)(4)

_____

　　　　　Argued October 6, 2021 – Decided November 18, 2021

　　　　　Before Judges Fuentes, Gilson, and Gooden Brown

　　　　　On appeal from the New Jersey Department of Labor
　　　　　and Workforce Development, Docket No. 17-002.

Steven R. Rowland argued the cause for appellant Farruggio's Bristol and Philadelphia Auto Express, Inc. (Brown, Moskowitz & Kallen, PC, attorneys; Steven R. Rowland, on the briefs).

John Steven Parker (Parker MacIntyre) of the Georgia and North Carolina bars, admitted pro hac vice, argued the cause for appellant Triad Advisors, LLC, in A-0226-20 (Louis H. Miron and John Steven Parker, attorneys; Louis H. Miron, on the briefs).

Christopher Weber, Deputy Attorney General, argued the cause for respondent New Jersey Department of Labor and Workforce Development (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher Weber, on the briefs).

PER CURIAM

These two appeals, which we address in a consolidated opinion, present the question of whether the New Jersey Department of Labor and Workforce Development (the Department) lawfully repealed a provision in one of its regulations concerning the New Jersey Unemployment Compensation Law (UC Law), N.J.S.A. 43:21-1 to -71. The UC Law exempts from its coverage certain workers who are also exempted under the Federal Unemployment Tax Act (FUT Act), 26 U.S.C. §§ 3301-3311. Consequently, businesses or individuals using the services of workers exempted under the FUT Act need not pay New Jersey unemployment taxes for those workers.

2

Appellants Farruggio's Bristol and Philadelphia Auto Express, Inc. (Farruggio's) and Triad Advisors, LLC (Triad) challenged the Department's repeal of N.J.A.C. 12:16-23.2(a)(4). That repeal eliminated one of the four methods for proving an exemption under the FUT Act. As a result of the repeal, the Department will no longer conduct its own analysis under the Internal Revenue Services' (IRS) tests for determining an independent contractor. Instead, the Department will rely on determinations made by the IRS through IRS private letter rulings, IRS determination letters, or tax audits conducted by the IRS.

Farruggio's and Triad argue that the Department's repeal of N.J.A.C. 12:16-23.2(a)(4) was arbitrary, capricious, and unreasonable because it is inconsistent with the UC Law and its intent. Farruggio's also argues that the repeal was done in violation of the New Jersey Administrative Procedures Act (AP Act), N.J.S.A. 52:14B-1 to -31. We disagree and find no ground to reverse the Department's repeal of N.J.A.C. 12:16-23.2(a)(4).

I.

The Department and its Commissioner administer and enforce the UC Law. N.J.S.A. 43:21-11. They also help to administer the State's Unemployment Compensation Fund. Ibid.; N.J.S.A. 43:21-9.

3

The UC Law requires the collection of funds from employers and employees during periods of employment to provide benefits for periods of unemployment. N.J.S.A. 43:21-2 and 21-7. The contributions, collected through a tax, are deposited into the State's Unemployment Compensation Fund used to pay eligible unemployment benefits. N.J.S.A. 43:21-3. See State v. Witrak, 194 N.J. Super. 526, 531 (App. Div. 1984) (explaining that "unemployment contributions are taxes").

Not all services performed for remuneration are subject to contribution under the UC Law. For example, if a worker is shown to be an independent contractor, that worker is exempt. N.J.S.A. 43:21-19(i)(6). One way to obtain an exemption is to establish that workers are independent contractors under what is known as the "ABC test." See N.J.S.A. 43:21-19(i)(6)(A), (B), and (C).

Another way to establish an exemption is to show a specialized exemption under N.J.S.A. 43:21-19(i)(7). See Phila. Newspapers, Inc. v. Bd. of Rev., 397 N.J. Super. 309, 319 (App. Div. 2007) ("statutorily excluded" services performed for remuneration are not employment for purposes of UC Law). That provision enumerates certain services exempt from the UC Law's definition of "employment." Ibid. To prove that type of exemption, it must be shown that

the workers are also exempt under the FUT Act.  In that regard, the UC Law

states:

> Provided that such services are also exempt under the Federal Unemployment Tax Act, as amended, or that contributions with respect to such services are not required to be paid into a state unemployment fund as a condition for a tax offset credit against the tax imposed by the Federal Unemployment Tax Act, as amended, the term "employment" shall not include [exemptions enumerated in subsections (A) through (Z).]
>
> [N.J.S.A. 43:21-19(i)(7).]

The Department has promulgated regulations on how businesses or

individuals can prove a FUT Act exemption.  See N.J.A.C. 12:16-23.1 and -23.2.

In 1995, the Department issued regulations allowing four methods to establish

an exemption under the FUT Act.  See 27 N.J.R. 501(a) (Jan. 13, 1995) (adopting

N.J.A.C. 12:16-23.2(a)(1) – (4)).  In 2017, that regulation stated:

> (a)    Evidence that services are not covered under FUT[ Act] may include among other things:
>
> 1.    Private letter ruling(s) from the Internal Revenue Service;
>
> 2.    An employment tax audit conducted by the Internal Revenue Service after 1987 which determined that there was to be no assessment of employment taxes for the services in question; however, the determination must not have been the result of the application of Section 530 of the Revenue Act of 1978;

3. Determination letter(s) from the Internal Revenue Service; and/or

4. Documentation of responses to the 20 tests required by the Internal Revenue Service to meet its criteria for independence. These tests are enumerated in IRS Revenue Rule 87-41.

[N.J.A.C. 12:16-23.2(a)(1) – (4) (2017).]

In March 2018, the Department, through its Commissioner, issued a rule proposal that included repealing N.J.A.C. 12:16-23.2(a)(4). That proposal was filed with the Office of Administrative Law (OAL). OAL then published the proposed rule change in the New Jersey Register. See 50 N.J.R. 1026(a) (Mar. 19, 2018).

As justification for the repeal of subsection (a)(4), the Department explained:

> N.J.A.C. 12:16-23.2(a)4 is problematic, in that it places the Department in an extremely difficult, if not untenable, position of having to ascertain, without the benefit of a determination from the IRS, whether the IRS's test for independence has been met relative to particular services. Consequently, it is the Department's position that it would be advisable to eliminate N.J.A.C. 12:16-23.2(a)4 altogether, so as to appropriately limit what constitutes evidence of a FUT[Act] exemption to IRS private letter rulings, IRS determination letters, and employment tax audits conducted by the IRS . . . .

[50 N.J.R. 1026(a) (Mar. 19, 2018).]

In response to the rule proposal, the Department received over forty-seven written comments. Those comments included statements in opposition to the proposal submitted by the New Jersey Motor Truck Association and the Association of Bi-State Motor Carriers. On April 10, 2018, a hearing was held on the proposed rule change. Thereafter, the Department responded to the comments and further explained its rationale for the repeal of N.J.A.C. 12:16-23.2(a)(4).

In response to comments that the repeal would be contrary to the legislative intent of N.J.S.A. 43:21-19(i)(7), the Department stated:

> The commenter[s] ha[ve] cited nothing in the law or the legislative history, nor is there anything in the law or legislative history, to indicate that the Legislature intended for the Department to base its determination as to whether the services provided by a particular individual(s) are exempt from FUT[ Act] coverage on its own independent analysis under the IRS test for independence. Quite the contrary, again, the law expressly conditions successful assertion of any one of the specialized exemptions set forth at N.J.S.A. 43:21-19(i)(7) on the actual existence of a FUT[ Act] exemption.
>
> [50 N.J.R. 2012(a) (Sept. 17, 2018).]

A-4932-18

The Department went on to explain that "only the IRS is in a position to determine whether particular services are exempt from coverage under FUT[ Act], a law that the IRS, not the [Department], enforces." Ibid.

The Department also responded to comments that it was difficult and sometimes not possible to obtain IRS determinations. The Department pointed out that the IRS provides a method, through federal Form SS-8, for businesses to obtain determination letters from the IRS as to the status of a worker or group of workers under the IRS's tests for independence. The Department also explained:

> Thus, the IRS not only encourages firms to seek determinations of worker status using Form SS-8, but also permits firms to obtain a determination regarding a class of workers based on an IRS analysis of a single representative worker. . . . In other words, among the express purposes of the Federal Form SS-8 is to ensure that firms may, in the most efficient manner possible (through an informal fact-finding conducted by an IRS "technician" and for an entire class of workers based on an analysis of one representative worker), obtain a binding IRS determination of the status of a worker or workers under the IRS test for independence for the purpose of establishing whether the services provided by that worker or workers are exempt from FUT[ Act] coverage.
>
> [50 N.J.R. 2012(a) (Sept. 17, 2018).]

A-4932-18

The Department also noted that the IRS "twenty-factor test" was no longer being used by the IRS, and that the IRS had replaced that twenty-factor test with a list of factors divided into three separate categories. Ibid.

Farruggio's is a motor carrier that leases large trucks from owners-operators who provide trucking services on its behalf. It appealed, challenging the Department's repeal of the provision of its regulations as of right. R. 2:2-3(a)(2). Triad is a security broker-dealer that conducts business through sales agents who work on a commission basis. It contends that its sales agents are independent contractors. It also appealed as of right to challenge the repeal of N.J.A.C. 12:16-23.2(a)(4).

Farruggio's and Triad are also both involved in contested matters before the OAL. Those matters involve the Department's effort to collect UC Law taxes based on the Department's contentions that the truck drivers and sales agents are employees and not independent contractors. In addition to appealing the repeal of the provision of the regulation, Farruggio's filed a motion for leave to appeal from an interlocutory decision of the Commissioner that is an issue in the OAL matter. We denied that motion. Consequently, the appeals currently before us do not involve either Farruggio's or Triad's OAL matters; they address only the Department's repeal of one of its regulations.

A-4932-18

## II.

On appeal, Farruggio's and Triad make three main arguments. They contend that the repeal of N.J.A.C. 12:16-23.2(a)(4) was (1) arbitrary, capricious, and unreasonable because it is inconsistent with and contrary to N.J.S.A. 43:21-19(i)(7); (2) invalid because the rule amendment was adopted in violation of the Administrative Procedures Act; and (3) invalid because obtaining a FUT Act exemption determination from the IRS may be difficult and the IRS has discretion to not issue a determination. Farruggio's and Triad also argue that the repeal of subsection (a)(4) should not be applied retroactively. That last issue, however, is not before us on this appeal. Instead, it is an issue appellants seek to raise in connection with their contested OAL proceedings that are still ongoing.

1.    The Repeal of N.J.A.C. 12:16-23.2(a)(4)

"Appellate review of an agency's determination is limited in scope." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). "Judicial review of agency regulations begins with a presumption that the regulations are both 'valid and reasonable.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012) (quoting N.J. Soc'y for Prevention of

Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008) (NJSPCA)). The parties challenging a regulation must rebut the presumption of its validity and reasonableness by establishing that the agency's action was "arbitrary, capricious or unreasonable." Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). Accordingly, our inquiry focuses on three things: (1) whether the agency followed the law; (2) whether the agency's decision is supported by substantial evidence in the record; and (3) whether, in applying the legislative policy to the facts, the agency reached a supportable conclusion. City of Jersey City v. Jersey City Police Officers Benev. Ass'n, 154 N.J. 555, 567 (1998).

We examine legal questions using a de novo standard of review. N.J. Mfrs. Ins. Co. v. Specialty Surgical Ctr. of N. Brunswick, 458 N.J. Super. 63, 70 (App. Div. 2019). Nevertheless, in doing so "[c]ourts afford an agency 'great deference' in reviewing its 'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible." Schundler, 211 N.J. at 549 (quoting NJSPCA, 196 N.J. at 385). "That approach reflects the specialized expertise agencies possess to enact technical regulations and evaluate issues that rulemaking invites." Ibid.

The relevant provision in the UC Law states that a worker's services may be excluded from the definition of "employment" if the services are also exempt under the FUT Act. N.J.S.A. 43:21-19(i)(7). Specifically, that statutory provision states that the term "employment" shall not include twenty-five enumerated services provided that

> such services are also exempt under the Federal Unemployment Tax Act, as amended, or that contributions with respect to such services are not required to be paid into a state unemployment fund as a condition for a tax offset credit against the tax imposed by the Federal Unemployment Tax Act, as amended,
>
> . . . .
>
> [N.J.S.A. 43:21-19(i)(7).]

The plain language of that statutory provision does not require the Department to determine whether services are exempt under the FUT Act. Instead, the plain language states that such services will be exempt under the UC Law when they "are also exempt under the [FUT Act]."

The repeal of subsection (a)(4) does not eliminate the exemption from the UC Law coverage; rather, it narrows what proof will constitute evidence of a FUT Act exemption. Before 2018, there were four methods for proving a FUT Act exemption. The repeal of subsection (a)(4) eliminated one method but left the other three methods in place.

12

Requiring actual proof of an exemption under the FUT Act is consistent with the plain language of N.J.S.A. 43:21-19(i)(7). The purpose of the repeal was for the Department to stop conducting its own analysis under the IRS tests for independence to determine if there might be a FUT Act exemption. Following the repeal of subsection (a)(4), the Department requires actual proof rather than non-dispositive evidence of an exemption under the FUT Act. There is nothing inconsistent with that requirement in the plain language of the statute.

Moreover, there is nothing inconsistent with the repeal and the overall purpose of the UC Law. The UC Law is "social legislation that provides financial assistance to eligible workers suffering the distress and dislocation caused by unemployment." Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 543 (2008). It is a remedial act, the primary objective of which "is to provide a cushion for the workers of New Jersey 'against the shocks and rigors of unemployment.'" Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Lab., 125 N.J. 567, 581 (1991) (quoting Provident Inst. for Sav. in Jersey City v. Div. of Emp. Sec., 32 N.J. 585, 590 (1960)).

The UC Law requires the payment of contribution by employers for services performed by an employee. N.J.S.A. 43:21-7(a), 7(c). It broadly defines "employment." See N.J.S.A. 43:21-19(i)(1)(A). Thus, businesses and

13

individuals seeking exemptions must prove those exemptions. See Carpet Remnant, 125 N.J. at 581 (requiring party challenging Department's employment classification, where employees are not statutorily excluded, to "establish the existence of all three criteria of the ABC test"). Consistent with that statutory scheme, N.J.S.A. 43:21-19(i)(7) sets forth certain services that are excluded from employment provided those services are also exempt under the FUT Act. There is nothing inconsistent in the Department requiring actual proof of an exemption under the FUT Act issued by the IRS, which administers the FUT Act.

Triad and Farruggio's also argue that the repeal is invalid because it is contrary to a prior rulemaking and previous administrative decisions applying subsection (a)(4). We disagree. In 1995, the Department issued regulations defining what it would accept as proof of a FUT Act exemption. There is nothing in the UC Law or the AP Act that prohibits the Department from repealing one of those methods.

In addition, that previous Commissioners have applied subsection (a)(4) when it was in existence does not bind the current Commissioner and does not prevent the Department from repealing that subsection. See G. & JK Enters., Inc. v. Div. of Alcoholic Beverage Control, 205 N.J. Super. 77, 85 (App. Div.

A-4932-18

1985) ("[A]n agency decision in a contested case is not an administrative rule."). See also N.J.S.A. 52:14B-2 (defining "'[a]dministrative rule' or 'rule'" so as not to include "agency decisions and findings in contested cases").

The Department and its Commissioner have been entrusted with the authority to interpret and implement the UC Law. Hargrove v. Sleepy's, LLC, 220 N.J. 289, 313 (2015); N.J.S.A. 43:21-9 and -11. Accordingly, the Department has the "power and authority to adopt, amend, or rescind such rules and regulations" necessary to carry out those objectives. N.J.S.A. 43:21-11(a). See also In re Masiello, 25 N.J. 590, 598 (1958) (acknowledging the basic notion that "experience is a teacher and not a jailer").

The Department exercised its authority to repeal the subsection of the regulation, reasoning that the UC Law conditioned a specialized exemption on evidence of a FUT Act exemption. That regulatory action is not inconsistent with the plain language or intent of N.J.S.A. 43:21-19(i)(7).

Farruggio's also argues that principles of "cooperative federalism" make the repeal of the subsection arbitrary, capricious, and unreasonable. We are not persuaded by that argument.

Cooperative federalism generally describes the approach by which the federal and state governments act together or in coordination to address issues

and administer programs.[1] The FUT Act "is part of a joint federal-state unemployment insurance program." Inlandboatmen's Union of Pac. Nat'l Health Benefit Tr. v. United States, 972 F.2d 258, 259 (9th Cir. 1992). The FUT Act was originally enacted as part of the Social Security Act of 1935 and "envisions a cooperative federal-state program of benefits to unemployed workers." Wimberly v. Lab. & Indus. Rels. Comm'n, 479 U.S. 511, 514 (1987). "Congress encouraged the states to set up their own unemployment compensation systems by granting employers in states complying with the requirements of [Section 3304 of the FUT Act] a ninety-percent credit against their federal unemployment taxes for taxes paid to state unemployment plans." Special Care of N.J., Inc. v. Bd. of Rev., 327 N.J. Super. 197, 207 (App. Div. 2000).

The concept of cooperative federalism, however, does not require the Department to adopt the tests or standard for independence used by the federal government. Instead, state programs, like the UC Law, need only comply with

---

[1] See Philip J. Weiser, Federal Common Law, Cooperative Federalism, and the Enforcement of the Telecom Act, 76 N.Y.U. L. Rev. 1692, 1695 (2001). Unlike regulatory programs that call for complete federal preemption or complete devolution to states, "cooperative federalism programs invite state agencies to superintend federal law." Ibid. See also Gerald S. Dickinson, Cooperative Federalism and Federal Takings After the Trump Administration's Border Wall Executive Order, 70 Rutgers U.L. Rev. 647, 661 (2018) (describing cooperative federalism as "the idea that in order for the federal government to execute its policies, it must do so with the support of the states").

A-4932-18

minimum federal standards. "[S]tates [have] great latitude regarding the parameters of their unemployment-compensation laws." Special Care of N. J., 327 N.J. Super. at 207-08 (alteration in original) (quoting Carpet Remnant, 125 N.J. at 578-79). Consequently, the doctrine of cooperative federalism does not require the Department to reinstate subsection (a)(4).

2.    The AP Act

Triad and Farruggio's also argue that the repeal of subsection (a)(4) is invalid because it was adopted in violation of the AP Act. In that regard, they argue that the notice to interested persons was insufficient, the Department's economic impact statement was insufficient, and the Department failed to include a "federal standard statement." We are not persuaded by these arguments.

The AP Act requires an agency to give notice of its intended action before adopting or repealing a rule or regulation. N.J.S.A. 52:14B-4(a)(1). The notice must be given at least thirty days in advance and include a statement describing the intended action. Ibid. The notice "shall be mailed to all persons who have made timely requests of the agency for advance notice of its rule-making proceedings and, in addition to any other public notice required by law, shall be

published in the New Jersey Register." Ibid. Furthermore, the notice must be distributed to "interested persons." Ibid. In that regard, the AP Act states:

> In order to inform those persons most likely to be affected by or interested in the intended action, each agency shall distribute notice of its intended action to interested persons, and shall publicize the same, through the use of an electronic mailing list or similar type of subscription-based e-mail service.
>
> [Ibid.]

The Department issued its proposal to repeal subsection (a)(4) on March 19, 2018. The proposal was filed with the OAL, and the OAL published the proposal in the New Jersey Register. 50 N.J.R. 1026(a) (Mar. 19, 2018). The Department also posted notice of the proposal on its website and forwarded it to interested parties on the opt-in list.

Farruggio's and Triad argue that they were entitled to specific notice because they were involved in contested proceedings concerning whether workers were exempt from contributions under the UC Law. "[I]nterested persons" is not defined in the AP Act. On the record before us, it is not clear that Triad or Farruggio's was contesting issues that related specifically to subsection (a)(4). Instead, that is an issue that relates to their pending contested OAL matters. Consequently, that issue is more appropriately addressed if there is an appeal from a final decision in either of those contested matters.

In this matter, which is a challenge to the repeal of the regulation itself, neither Farruggio's nor Triad has demonstrated that it was entitled to specific notice as an interested person. See Gillespie v. Dep't of Educ., 397 N.J. Super. 545, 556 (App. Div. 2008) (explaining that when notices are broadly disseminated it satisfies the requirements of the AP Act); In re Adoption of Rules Concerning Conduct of Judges of Comp., N.J.A.C. 12:235-3.11 Through 3.23, 244 N.J. Super. 683, 687 (App. Div. 1990) (holding that when a proposed regulation directly and uniquely affects certain specific persons, notice must be provided to those persons). "The fact that an entity may be impacted by an agency decision does not, in and of itself, give rise to a right to notice and participation in the administrative process." Deborah Heart & Lung Ctr. v. Howard, 404 N.J. Super. 491, 507 (App. Div. 2009).

Farruggio's and Triad both became aware of the repeal of the subsection of the regulation, and they both had notice of that repeal with sufficient time to file these appeals challenging the action. Accordingly, the Department provided "effective notice, to the end that public comment [was] encouraged and given a meaningful role in the process" of the regulation repeal. See In re Adoption of Rules, 244 N.J. Super. at 687.

The AP Act also provides that the notice shall include an "Economic Impact" statement, describing "the expected costs, revenues, and other economic impact" on state government bodies and, particularly, "any segment[] of the public proposed to be regulated[.]"  N.J.A.C. 1:30-5.1(c)(3).  The Department's notice of the repeal of subsection (a)(4) included an economic impact statement.  Triad argues that the statement was inadequate and superficial.  Triad's contentions, however, are conclusory and not supported with any specific legal authority or facts.

Triad also contends that the repeal was invalid for failure to include a Federal Standard Statement.  The AP Act and its regulations provide that notice of a proposed rule shall include a

> "Federal Standards Statement" (or a "Federal Standards Analysis"), which addresses whether the rule(s) in the notice of proposal contain standards or requirements that exceed standards or requirements imposed by Federal law.  The analysis shall apply to any new, readopted, or amended rule(s) under the authority of or in order to implement, comply with, or participate in any program established under Federal law or under a State statute that incorporates or refers to Federal law, standards, or requirements.
>
> [N.J.A.C. 1:30-5.1(c)(4).]

The Department's notice of proposal contained a Federal Standard Statement.  Contrary to Triad's contentions, no federal standard analysis was

required because the repeal does not exceed the standard imposed by Federal law. As already discussed, the repeal did not eliminate the exemption; rather, it eliminated one of four methods of proving the exemption, thereby leaving in place three methods for proving an exemption under the FUT Act. In short, the repeal of N.J.A.C. 12:16-23.2(a)(4) did not create or amend any standard or requirements that exceed those imposed by Federal law, and, therefore, no federal standard analysis was required. Accordingly, the Federal Standard Statement provided by the Department was adequate.

We note that Triad also argues that the Department violated its due process rights when it did not provide Triad with actual notice of the proposed amendment. Triad's due process argument, to the extent it exists, is one that should be raised and addressed in the context of its contested administrative proceeding, and we decline to address it on this appeal, which challenges the repeal of a section of the regulations.

3. The Ability to Obtain an IRS Determination

Farruggio's and Triad assert that the repeal of subsection (a)(4) should be vacated because it may be difficult and costly to get a determination from the IRS. They argue that the IRS has discretion not to issue a private letter ruling or a determination letter, and the IRS can decide not to conduct an audit.

21

We reject these speculative arguments. The IRS process for determining worker status for purposes of federal taxes and income tax withholding is set forth in Federal Form SS-8. See Internal Revenue Serv., Instructions for Form SS-8 (05/2014), https://www.irs.gov/instructions/iss8 (last visited Nov. 5, 2021).

Nothing in the record supports Farruggio's and Triad's claims that the IRS will not issue private letter rulings or determination letters. Consequently, we will not address this issue because the court should not issue advisory opinions or rule on hypothetical situations. G.H. v. Twp. of Galloway, 199 N.J. 135, 136 (2009). "The judicial function operates best when a concrete dispute is presented to the courts." Ibid. Nor do we decide cases based on facts that are undeveloped or uncertain. N.J. Ass'n for Retarded Citizens, Inc. v. N.J. Dep't of Hum. Servs., 89 N.J. 234, 241 (1982).

4.      Whether the Repeal is to Be Applied Retroactively

Finally, Triad and Farruggio's argue that the repeal of subsection (a)(4) should not be given retroactive application. Farruggio's and Triad seek a determination on the retroactivity in connection with their pending contested matters before the OAL. As already pointed out, that issue is not before us. We

denied Farruggio's motion for leave to appeal and Triad never filed a motion for leave to appeal.

In summary, we reject both Farruggio's and Triad's challenge to the repeal of N.J.A.C. 12:16-23.2(a)(4). We find no basis for overturning or vacating the Department's regulatory action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION