HORACE W. BLANCK AND ANGELINE V. BLANCK, TRAD-
ING AS BLANCK'S LIQUOR STORE, AND THE SOUTH
JERSEY RETAIL LIQUOR STORE ASSOCIATION, PETI-
TIONERS-APPELLANTS, v. MAYOR AND BOROUGH
COUNCIL OF MAGNOLIA, HARRY R. D'AMICO AND
CATHERINE D'AMICO, TRADING AS D'AMICO LIQUOR
STORE AND DIRECTOR OF DIVISION OF ALCOHOLIC
BEVERAGE CONTROL, RESPONDENTS-RESPONDENTS.

Argued October 9, 1962—Decided November 19, 1962.

486

*Mr. Grover C. Richman, Jr.,* argued the cause for petitioners-appellants (*Messrs. Richman and Berry,* attorneys).

*Mr. Norman Heine,* attorney, argued the cause for respondents, Harry A. D'Amico and Catherine D'Amico, trading as D'Amico Liquor Store.

*Mr. Herbert S. Allerman,* Deputy Attorney General of New Jersey, filed "Statement In Lieu of Brief" for respondent, Director of Division of Alcoholic Beverage Control (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

SCHETTINO, J. An appeal had been taken to the Director of the Division of Alcoholic Beverage Control to rescind the issuance of a license permitting plenary retail distribution of liquor in the Borough of Magnolia and to set aside, as invalid, a 1960 ordinance creating the license. From an order of the Director affirming the issuance of the license, petitioners appealed to the Appellate Division, which affirmed. 73 *N. J. Super.* 306 (*App. Div.* 1962). We granted certification. 38 *N. J.* 182 (1962).

Petitioners-appellants are Horace W. and Angeline V. Blanck, holders of one of the plenary retail consumption licenses in the borough, and the South Jersey Retail Liquor Store Association, an unincorporated association consisting of holders of plenary retail distribution licenses in South Jersey. The respondents are the Mayor and Borough Council of Magnolia, and Harry R. and Catherine D'Amico, trading as the D'Amico Liquor Store, holders of the challenged license.

By virtue of an ordinance adopted March 12, 1940, the Borough of Magnolia had limited the number of plenary retail consumption licenses to three and the number of club

licenses to one, with no provision for any plenary retail distribution license. At a meeting held on August 24, 1960, the Borough Council approved on first reading an ordinance amending the 1940 ordinance and establishing the plenary retail distribution license and set October 5, 1960 as the date for public hearing and final passage of the ordinance. Respondent Harry D'Amico, who served as a councilman for many years and at the time of the passage of the amendatory ordinance complained of was serving as president of the council, was not present at the meeting of August 24. Notice of the council's action was published in the *Camden Courier-Post* on September 23, 1960. Mr. D'Amico did attend the meeting held on September 7, 1960, and moved that the minutes of the last regular meeting of August 3 and the adjourned meeting of August 24 be approved. His motion was seconded and unanimously adopted. On October 1, 1960 Harry D'Amico presented his resignation as president and member of the council to the borough clerk, his brother Samuel D'Amico. The record shows that no other official knew of the resignation. Harry D'Amico was not present at the council meeting of October 5, 1960, at which the first order of business was consideration of the pending ordinance. The ordinance was read and the mayor opened the public hearing thereon. There being no comment on the ordinance from the citizens in attendance, the public hearing was closed and the ordinance passed by a unanimous vote of the councilmen present at the meeting. Later in the same meeting, D'Amico's resignation was submitted and accepted by the council. Notice of the council's action was published in the *Camden Courier-Post* on October 14, 1960.

On October 7, 1960 the D'Amicos filed an application for the newly established license. On October 26 the only other application filed was received by the borough clerk. Two others inquired about license applications and were given the forms, but neither filed.

At a meeting of November 2, 1960, certain citizens appeared in order to determine what could be done to have the

ordinance rescinded. The mayor and council advised them that if they filed a petition to that effect, their petition would be considered. The meeting was adjourned to November 7, 1960. The council also announced that it would, at the adjourned meeting, consider the two applications for the plenary retail distribution license.

At the adjourned meeting, the mayor and council received a petition containing 142 signatures requesting that the ordinance be rescinded. After a short recess, during which the mayor and council conferred privately, it was announced that the mayor and council saw no justification for rescinding the ordinance. A statement was read by a councilman stating that the council was inclined to award the license to the respondents D'Amico because the D'Amicos, upon obtaining the license, planned to build a combination store and residence which would represent a valuable property improvement and result in general improvement of the business area, whereas the other applicant, Myers, intended to use his existing residence as a temporary liquor store and had no definite future plans; that the premises owned by Myers were only 500 feet distant from the place of business of petitioners Blanck, while the premises contemplated by respondents D'Amico were a considerable distance away "at the opposite end of town"; and that the increased population since 1940 lent further propriety to the creation of such a license. Motions were then introduced and carried granting the application of the D'Amicos, subject to the completion of the planned premises, and denying the application of the other applicant.

██ An appeal from the issuance of the license was filed with the Director of the Division of Alcoholic Beverage Control. On November 30, 1960, the Director sent a notice of a hearing scheduled for December 19, 1960. The hearings were conducted and on April 11, 1961 the Alcoholic Beverage Control Hearer concluded that there was no indication that the mayor and council members had acted improperly, and that the ordinance and the issuance of the license were proper in all other respects. In his report the Hearer stated:

"Determination as to the number of licensed places to be permitted in any particular area is a matter confided, in the first instance, to the sound discretion of the issuing authority. The burden of showing an abuse of discretion rests with the appellants. *Union County Retail Liquor Stores Association v. Roselle, et al.,* Bulletin 772, Item 11. Considering the increase in population, the distance between the Blanck and D'Amico premises and the fact that the latter premises are in a commercial zone, it does not appear that respondent Mayor and Council abused its discretionary power. Moreover, under the facts of this case, it does not appear that its action was arbitrary or unreasonable."

This approach was consistent with the principle that the issuance, renewal and transfer of liquor licenses rest in the sound discretion of the issuing authority and will not be disturbed in the absence of a clear abuse of discretion. *Paul v. Brass Rail Liquors, Inc.,* 31 *N. J. Super.* 211, 214 (*App. Div.* 1954).

The petitioners filed exceptions to the Hearer's report, but on June 1, 1961 the Director concurred in and adopted the findings and conclusion of the Hearer.

During the hearings, the following were elicited: (1) that respondent Harry R. D'Amico had, prior to the passage of the ordinance, told both the mayor and the borough clerk, in separate private conversations, that if the ordinance was passed, he would like to apply for the license; (2) that D'Amico had spoken to one member of the council with regard to the ordinance before its passage and indicated his interest in obtaining the license, but that D'Amico had never spoken to the other four borough councilmen; (3) that D'Amico had ordered plans for his new building before the ordinance was passed; and (4) that the D'Amicos complied with the conditions of the grant by completing the premises. (They have been operating under the license since July 1961.)

The petitioners on their appeal to the Appellate Division urged two grounds for reversal: (1) that the ordinance under which the plenary retail distribution license was issued to respondent Harry R. D'Amico was invalid because he was president of the Borough Council of Magnolia at the time the

490

ordinance was enacted and had a personal and financial interest which conflicted with his public duty to the citizens of the Borough of Magnolia; and (2) that the application by respondents Harry R. and Catherine D'Amico for the plenary retail distribution license should have been made to the respondent Director of the Division of Alcoholic Beverage Control and not the respondent Mayor and Borough Council of Magnolia. Thereafter, petitioners moved before the Appellate Division for a stay of the proceedings and for leave to take the testimony of one Walter Peters, Sr., who stated to petitioner Horace W. Blanck subsequent to the Director's hearing that Peters had had a conversation with the mayor "in the early fall of 1960" and that the mayor had told Peters that the passage of the ordinance and issuance of the license to the D'Amicos was "all fixed." Petitioners also moved for the taking of additional testimony of the mayor on the grounds that a letter sent by him to some of the citizens of Magnolia subsequent to the Director's hearing conflicted with his testimony at that hearing. These motions were denied.

I.

The right, most extensive in nature, to regulate the field of intoxicating liquors is within the police power of the State, and this power is practically limitless. *Borough of Fanwood v. Rocco,* 33 *N. J.* 404, 411 (1960); *Meehan v. Board of Excise Commissioners,* 73 *N. J. L.* 382, 386 (*Sup. Ct.* 1906), affirmed 75 *N. J. L.* 557 (*E. & A.* 1908). From the earliest history of our State, the sale of intoxicating liquor has been dealt with by the Legislature in an exceptional way. Because of its *sui generis* nature and significance, it is a subject by itself, to the treatment of which all the analogies of the law, appropriate to other administrative agencies, cannot be indiscriminately applied. *Paul v. Gloucester County,* 50 *N. J. L.* 585, 595 (*E. & A.* 1888). This field is peculiarly subject to strict governmental control. *Franklin Stores Co. v. Burnett,* 120 *N. J. L.* 596, 598 (*Sup.*

*Ct.* 1938). Consistent therewith is the Legislature's mandate that "This chapter is intended to be remedial of abuses inherent in liquor traffic and shall be liberally construed." *R. S.* 33 :1–73.

Chief Justice Case, writing for the Court of Errors and Appeals in *Hudson Bergen County Retail Liquor Stores Assn. v. Board of Com'rs of City of Hoboken,* 135 *N. J. L.* 502, 507–509 (1947), stated that the reason and the need for singling out the liquor traffic for peculiar limitation and strict supervision may be read in our statutes for nearly 250 years, from early colonial times through the post-prohibition legislative requirements. He also emphasized that, historically, the Legislature has determined who the licensing tribunal should be and that the authority to issue or control licenses need not necessarily be limited to municipal action, pointing out that the Director of Alcoholic Beverage Control has, with respect to numerous grades of licenses, the issuing authority. *R. S.* 33 :1–18. He pointed out, moreover, that our courts have held that, in interpreting statutes in this field, meticulous technicalities should not be permitted to thwart the Legislature's effort to keep a public convenience from becoming a social evil and therefore state authorities should be given every opportunity to work out the mandate of the Legislature. Thus, having regard for the historically exceptional treatment accorded the sale of intoxicating liquor and for the extensive expressions of authority in the statute, the Director has powers of supervision and control which set him apart from any other formal appellate tribunal. See also *Brush v. Hock,* 137 *N. J. L.* 257, 259–260 (*Sup. Ct.* 1948).

■■ The test in the establishment and issuance of liquor licenses is whether the public good requires it. *Paul v. Gloucester County, supra,* 50 *N. J. L.* 585. In *Zicherman v. Driscoll,* 133 *N. J. L.* 586, 588 (*Sup. Ct.* 1946), the court said: "The common interest of the general public should be the guide post in the issuing and renewing of licenses." Likewise, the Director may cancel licenses issued by local

issuing authorities when not warranted by public need. *Brush v. Hock, supra* (137 *N. J. L.* 257).

Ordinarily, the matter lies within the discretion of the local issuing body. However, the Director possesses the final agency review of the action of a local board relating to liquor licenses. *Neiden Bar & Grill, Inc. v. Municipal Bd. of Alcoholic Beverage Control of City of Newark,* 40 *N. J. Super.* 24, 29 (*App. Div.* 1956). "Within their respective spheres the [Director] and the municipal governing bodies [are] vested with very broad measures of discretion in passing upon applications for licenses." *Borough of Fanwood v. Rocco, supra,* 33 *N. J.,* at *p.* 412. In the same opinion, Mr. Justice Jacobs pointed out (at *p.* 414) :

"Although New Jersey's system of liquor control contemplates that the municipality shall have the original power to pass on an application for a \* \* \* license or the transfer thereof, the municipality's action is broadly subject to appeal to the Director of the Division of Alcoholic Beverage Control. The Director conducts a *de novo* hearing of the appeal and makes the necessary factual and legal determinations on the record before him. \* \* \* Under his settled practice, the Director abides by the municipality's grant or denial of the application so long as its exercise of judgment and discretion was reasonable."

No party to this action disputes these principles, but we reiterate them in order to focus on the specific problem confronting us against a backdrop of historical and present-day guide posts.

## II.

In our view, the present action is unique in its facts, and these facts required an entirely different review by the Director than was accorded. In petitioners' notice of appeal, they alleged that the grant of the plenary retail distributors license to the D'Amicos was erroneous for the following reasons: (1) the ordinance under which the license was issued was invalid because respondent Harry D'Amico was president of the borough council at the time the ordinance became law;

(2) the granting of the license was a violation of the alcoholic beverage control laws and regulations of the State of New Jersey; (3) there was no public need or necessity for the issuance of the license because the area was amply served by existing outlets; and (4) the granting of the license was arbitrary and unreasonable and constituted an abuse of discretion.

In the Director's *Conclusions and Order,* adopting the Hearer's recommendations that the action of the local body in granting the license be affirmed, he stated:

"Moreover, and of considerable import, it is well to mention that Mr. D'Amico need not have resigned from the Council to qualify as a retail licensee although, if such a situation had developed, application would then have had to be made to the Director instead of to the local governing body."

In their brief in the Appellate Division, petitioners for the first time contended that as Harry D'Amico applied for the license less than 48 hours after he resigned as president of the borough council, his application should have been made directly to the Director of the Division of Alcoholic Beverage Control as provided by *R. S.* 33:1–20. The Appellate Division stated (73 *N. J. Super.,* at *p.* 310):

"The latter point will be considered first. By *R. S.* 33:1–20, *N. J. S. A.* it is provided that no liquor license shall be issued by any issuing authority to any member thereof, and that in any such case, application may be made to the Commissioner (Director) who may issue the license. This provision does not apply to the instant case. Harry R. D'Amico had resigned as councilman prior to applying for the license. True, the time interval was short, but the council did not issue a license to one of its members, so that the mandate of *R. S.* 33:1–20, *N. J. S. A.* was not disobeyed. Such circumstances would be pertinent to the charge of corruption or favoritism hereafter considered, but do not make out a violation of *R. S.* 33:1–20, *N. J. S. A.*"

As we view *R. S.* 33:1–20 its purposes are several. Ordinances establishing local bodies for the issuing of liquor licenses provide little or no compensation for the members.

Conceivably, the members perform arduous and time-consuming work and are frequently subject to public and private criticism. The rewards are no more than those usually enjoyed by one who feels that he should perform a public service. Thus, when proper circumstances arise, no such member should be barred from receiving a license. Another purpose is to put into the hands of an outsider and an impartial judge the power to grant or deny the license to a member of the local issuing body. This authority is lodged in the Director. The obvious underlying purpose of this section is to eliminate not only actual favoritism by fellow members of the local body but also any aura of it which might diminish the public feeling that there is strict impartial supervision and control of the liquor industry.

We also must bear in mind the strong language of R. S. 33:1–73 that the basic legislative philosophy and intent of the Alcoholic Beverage Control Law is "to be remedial of abuses inherent in liquor traffic and shall be liberally construed," and of R. S. 33:1–23 that the Director shall "do, perform, take and adopt all other acts, procedures and methods designed to insure the fair, impartial, stringent and comprehensive" enforcement of the Alcohol Beverage Control Law.

The case before us admittedly does not fall into the category of one involving an applicant who is a member of the local body at the time his application was filed. Although R. S. 33:1–20 does not expressly cover this case, a fair reading of all these sections compels a conclusion that where a member of a local body is interested in obtaining a license and an ordinance creating and authorizing such license is introduced and passed, and thereafter such member resigns and the license is issued to him, the Director should closely scrutinize the entire transaction to determine (1) whether the ordinance was adopted in the public interest or to favor the member, and (2) whether, as an original proposition, the license should be issued to the former official rather than a competing applicant. This, we think, is required to satisfy

the legislative aim that the Director exercise a broad supervisory power in this delicate area. But there should be an initial application to the local body. Such a procedure would save to the local body the first determination of the grant of the license and yet give to the Director the broad powers of *R. S.* 33:1–20, without restricting the Director's determinations by the findings of the local body as in the ordinary appeal. *Cf., Rajah Liquors v. Division of Alcoholic Beverage Control,* 33 *N. J. Super.* 598 (*App. Div.* 1955), certif. denied 18 *N. J.* 204 (1955).

In passing we note a similar philosophy already ordained by the Director in *R. S.* 33:1–20 applications. State Regulation No. 4, Rule 7 provides:

"There shall also be submitted a certified copy of resolution adopted by the issuing authority of the municipality wherein the premises sought to be licensed are situated, setting forth that said issuing authority has no objection to the issuance (or the transfer, as the case may be) of the license applied for and consents thereto and, furthermore, is not aware of any circumstances or provisions of law or local ordinance which would prohibit the issuance (or the transfer, as the case may be) of the license." Division of Alcoholic Beverage Control, *Rules and Regulations* 13–14 (1957).

The Director there has imposed upon himself certain procedures not necessarily required by the Alcoholic Beverage Control Law.

In our view, the Director should have taken petitioners' appeal and molded it as if it were a direct application by the D'Amicos for a license. He would have had before him the competing applicant, Myers, and could have then decided all the issues. He would have made a determination as to whether public welfare or favoritism was the basis for enacting the ordinance. If he found public welfare, he would have then considered the relative merits of the two applications. If he found that the amendment was passed for a reason not permitted by the Legislature, he would not have granted a license to either applicant. *Cf. Board of Commissioners of the Town of Phillipsburg v. Burnett,* 125 *N. J. L.*

157 (*Sup. Ct.* 1940). Nevertheless, the power he would exercise would be in the nature of an issuing authority (such as he exercises under *R. S.* 33:1–20) rather than an appellate one.

We shall remand the cause to the Director of Alcoholic Beverage Control for action not inconsistent with this opinion. In view of our action we find it unnecessary to pass upon the alleged erroneous determination of the Appellate Division on the motions for the taking of additional testimony. We assume that such testimony will be available before the Director.

Reverse and remand. No costs.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance*—None.