**SEA GIRT RESTAURANT AND TAVERN OWNERS ASSOCIATION, INC., a Nonprofit Organization of the State of New Jersey, 810 The Plaza, Inc., a Corporation of the State of New Jersey, Trading As the Stadium, and Stadium Realty Co. Inc., a Corporation of the State of New Jersey, Rod's Olde Irish Ale House, Inc., a Corporation of the State of New Jersey, Harrigan's Inc., a Corporation of the State of New Jersey, T/A Harrigan's Pub Sea Girt Ocean View, Inc., a New Jersey Corporation, Avon Hotel Corporation, a Corporation of the State of New Jersey, Plaintiffs,**

v.

**BOROUGH OF SEA GIRT, NEW JERSEY, Mayor Thomas Black, Mayor of the Borough of Sea Girt, Councilman William Marriott, Councilman Frederick McKnight, Councilman Mark Regan, Councilwoman Margaret Appel, Councilman Raymond Harter, Members of the Governing Body of Sea Girt, Helen B. Brash, Municipal Clerk of the Borough of Sea Girt, General Irwin I. Kimmelman, Attorney General of the State of New Jersey, Director John F. Vassallo, Jr., Director of Alcoholic Beverage Control, Defendants.**

Civ. A. No. 85–5360.

United States District Court,
D. New Jersey.

Jan. 14, 1986.

Thomas C. Brown, West Orange, N.J., for plaintiffs.

Lee Barry, Deputy Atty. Gen., Trenton, N.J., for defendants, State of N.J. and New Jersey Alcoholic Beverage Control Div.

William H. Burns, Jr., Pearce, Maguire, Burns, O'Brien & Van Note, Spring Lake, N.J., for defendants Borough of Sea Girt and Borough of Sea Girt Officials.

RODRIGUEZ, District Judge.

On November 5, 1985, in a referendum held in the Borough of Sea Girt, a majority of the voters in that community voted in favor of limiting the sale of alcoholic beverages in licensed retail facilities to the hours of 6:00 a.m. to midnight, seven days a week.[1] This vote reduced the hours alcoholic beverages could be served in Sea Girt by two hours a day.[2] Plaintiffs, the Sea Girt Restaurant and Tavern Owners Association, Inc. and six corporate holders of plenary retail consumption liquor licenses which operate restaurants and taverns in Sea Girt, immediately filed this civil rights suit pursuant to 42 U.S.C. § 1983 challenging the constitutionality of the referendum process and sought a temporary restraining order to prevent the new ordinance from going into effect pending the outcome

of the lawsuit. In addition to injunctive relief, plaintiffs seek damages, attorneys fees and costs of suit. Defendants named in this action are the Borough of Sea Girt, its mayor, council people and municipal clerk (collectively the "borough defendants"), and the Attorney General of the State of New Jersey and the Director of the state's Alcoholic Beverage Control Board (collectively the "state defendants"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. In an Order entered November 8, 1985, this Court denied plaintiffs' request for emergent relief and scheduled a hearing to resolve the constitutional questions.[3] Testimony was taken and legal arguments were heard on the question of liability on December 11 and 12, 1985.

Plaintiffs contend that a liquor license is a property interest protected from arbitrary state or municipal action by the First and Fourteenth Amendments to the United States Constitution and that the New Jersey statute, N.J.S.A. 33:1–47.1 (Supp.1985), which permits municipalities to regulate the hours of sale of alcoholic beverages by means of a public referendum, has diminished the value of their licenses and is unconstitutional in that it (1) deprives holders of liquor licenses of property interests without due process of law and (2) unduly burdens interstate commerce. In the alternative, plaintiffs assert that even if the referendum process is constitutional, the statute's five-year restriction on resubmission of referendum issues to public vote is an unconstitutional restriction on access to the ballot.

Defendants assert in response that a liquor license, far from being property for purposes of due process analysis, is merely

---

1. On this referendum question, a total of 1,302 votes were cast and the proposal passed by a majority of 80 votes. A similar referendum question appeared on the ballot in the neighboring municipality of Belmar. In that community, a total of 2,072 votes were cast and the proposal passed by a majority of 22 votes.

2. Prior to the referendum, alcoholic beverages could be sold between the hours of 6:00 a.m. and 2:00 a.m.

3. The hearing on plaintiffs' application for a preliminary injunction was consolidated with the trial of the action on the merits pursuant to Rule 65(a)(2) of the *Federal Rules of Civil Procedure.* The issue of damages was bifurcated from the present proceedings.

a temporary permit to engage in an otherwise illegal activity and as such is subject to reasonable regulation. According to defendants, even those states which consider a liquor license to be property recognize the right of the state to regulate the sale of alcoholic beverages. Accordingly, defendants assert that due process is not violated as long as such regulation bears a rational relationship to the public interest. In addition, defendants contend that a five-year restriction on resubmission to a vote of issues decided by popular referendum is constitutionally permissible. Finally, defendants distinguish regulation of intoxicating liquors from other types of regulation which are subject to traditional commerce clause requirements to conclude that this particular restriction on hours of sale of alcoholic beverages does not place a burden on interstate commerce.

For the reasons set forth below, this Court finds that *N.J.S.A.* 33:1–47.1, which provides for regulation of the hours of sale of intoxicating liquors by local referendum, does not violate plaintiffs' procedural or substantive due process rights protected by the Fourteenth Amendment to the Constitution, nor does the result of the referendum process place an undue burden on interstate commerce in violation of the Commerce Clause of the Constitution. In addition, the Court does not find it necessary to address plaintiffs' claim that the statute impermissibly interferes with freedom of association or access to the ballot as protected by the First Amendment because the Court construes the five-year prohibition on resubmission of referendum questions to apply only to resubmission of the "same" questions. Accordingly, *N.J. S.A.* 33:1–47.1 is constitutional and judgment is entered in favor of defendants.

## DISCUSSION

Any analysis of a statute dealing with the regulation of the sale of alcoholic beverages must begin with a discussion of the Twenty-first Amendment to the United States Constitution. Section 2 of that Amendment provides:

The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

This clause gives to the states broad powers to specify the times, places and circumstances under which liquor may be sold within their borders. *Capital Cities Cable Inc. v. Crisp*, 467 U.S. 691, ——, 104 S.Ct. 2694, 2707, 81 L.Ed.2d 580, 597 (1984); *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972); *Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966). The New Jersey courts have held consistently that this power to regulate the sale of alcoholic beverages is virtually limitless. *Joseph H. Reinfeld, Inc. v. Schieffelin & Co.*, 94 N.J. 400, 412, 466 A.2d 563 (1983); *Blanck v. Mayor and Borough Council of Magnolia*, 38 N.J. 484, 490, 185 A.2d 862 (1962); *Mazza v. Cavicchia*, 15 N.J. 498, 505–06, 105 A.2d 545 (1954), *G. & J.K. Enterprises, Inc. v. Div. of Alcoholic Beverage Control*, 205 N.J.Super. 77, 82–85, 500 A.2d 43 (App.Div. 1985). In fact, the sale of such beverages may be prohibited altogether. *Mazza, supra*, 15 N.J. at 505, 105 A.2d 545; *Eskridge v. Div. of Alcoholic Beverage Control*, 30 N.J.Super. 472, 475, 105 A.2d 6 (App.Div. 1954).

Plaintiffs concede that the state of New Jersey, and its municipalities by virtue of a delegation of this power, can regulate the hours during which alcoholic beverages may be sold. (Plaintiffs' brief, at 17–18). They complain, however, that the statutory scheme set forth in *N.J.S.A.* 33:1–47.1, which permits the hours to be set by majority vote on voter-initiated referendum, denies them due process of law. Although the gravamen of plaintiffs' complaint appears to be denial of *procedural* due process—i.e., inadequate notice and no opportunity to be heard, plaintiffs also appear to be making a *substantive* due process argument—i.e., the statute impermissibly infringes on a fundamental right. Although the parties blur the distinction between these two principles, the Court will analyze

each separately, beginning with plaintiffs' primary claim, denial of procedural due process. The Court notes at the outset that courts, particularly trial courts, are reluctant to reach the conclusion that a statute is unconstitutional. *State v. Cannarozzi,* 77 N.J.Super. 236, 239, 186 A.2d 113 (App.Div.1962); *Cafe Gallery, Inc. v. State,* 189 N.J.Super. 468, 474, 460 A.2d 227 (Law Div.1983); *Supermarkets General Corp. v. Sills,* 93 N.J.Super. 326, 336, 225 A.2d 728 (Ch.Div.1966). A strong presumption favors the validity of legislation. *Velmohos v. Maren Engineering Corp.,* 83 N.J. 282, 295, 416 A.2d 372 (1980).

## PROCEDURAL DUE PROCESS

The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). Therefore, in order to establish an entitlement to certain procedural protections, plaintiffs first must establish that their interest in a liquor license constitutes a property interest. To have a property interest in a liquor license, plaintiffs "must have more than an abstract need or desire for it.... [They] must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Such interests in property can take many forms. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (teacher's tenure contract creates a property interest); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits constitute property).

In order to determine if a liquor license constitutes property for purposes of due process analysis, the Court must look to state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Beckham v. Harris,* 756 F.2d 1032, 1036 (4th Cir.1985). As the Supreme Court stated in *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Interests in liquor licenses in New Jersey are created and governed by statute, the Alcoholic Beverage Law, *N.J.S.A.* 33:1–1, *et seq.* (1940 and Supp.1985). This statute provides that all licenses shall be for a term of one year and are not transferable except as follows:

> In the case of death, bankruptcy, receivership or incompetency of the licensee, or if for any other reason whatsoever the operation of the business covered by the license shall devolve by operation of law upon a person other than the licensee, the director or the issuing authority may, in his or its discretion, extend said license for a limited time, not exceeding its term, to the executor, administrator, trustee, receiver or other person upon whom the same has devolved by operation of law as aforesaid. *Under no circumstances, however, shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except to the extent expressly provided by this chapter. N.J.S..A.* 33:1–26 (Supp.1985). (emphasis added).

This clear legislative pronouncement that liquor licenses are not property has been consistently supported by case law, all of the cases holding that a license to sell intoxicating liquor is not a contract nor is it a property right. Rather, it is a temporary permit or privilege to pursue an occupation which otherwise is illegal. *Butler Oak Tavern v. Alcoholic Beverage Control Div.,* 20 N.J. 373, 381, 120 A.2d 24 (1956); *Mazza, supra,* 15 N.J. at 505, 105 A.2d 545; *G. & J.K. Ent. v. Div. of Alcoholic Beverage, supra,* 205 N.J.Super. at 82, 500 A.2d 43; *Gober v. Pemberton Tp.,* 185 N.J.Super. 323, 335, 448 A.2d 516 (Law Div.1982).

However, this precise question, whether a liquor license should be characterized as "property" for federal purposes despite a legislative pronouncement to the contrary, has been addressed only once before by the New Jersey Supreme Court, and in a slightly different context from the present case. In *The Boss Co., Inc. v. Bd. of Commissioners of Atlantic City,* 40 N.J. 379, 192 A.2d 584 (1963), the state Supreme Court was faced with the question whether a liquor license and any rights thereunder were property rights to which a federal lien could attach pursuant to section 6321 of the Internal Revenue Code. The Court held that a liquor license in New Jersey constitutes "property" within the meaning and for the purposes of section 6321. *Id.* at 387, 192 A.2d 584. *See also Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983) (licensee's interest in renewal of liquor license constitutes a property right for purposes of the Fourteenth Amendment); *Anderson v. Utah,* 589 P.2d 1214 (Utah 1979) (licensing of a liquor business represents a substantial property interest to the licensee); *Midwest Beverage Co. v. Gates,* 61 F.Supp. 688 (N.D.Ind.1945) (use of the liquor license has elements of property irrespective of what the legislature might declare about the license itself and therefore is property within the meaning of the due process clause of the Constitution); *but see Shamie v. City of Pontiac,* 620 F.2d 118 (6th Cir.1980) (first-time liquor license *applicant* does not enjoy procedural due process rights under Michigan state law).

In so holding, the Court looked beyond the language of the Alcoholic Beverage Law to examine the attributes of the license itself. The Court determined that the license has value: (1) personal value to

the licensee from the right to engage in business and (2) monetary value to the licensee from the power to substitute, with municipal consent, another person in his place as licensee. *Boss Co., supra,* 40 N.J. at 384, 192 A.2d 584. The Court concluded:

> [T]he liquor license is a legal interest in the nature of an economic asset, created and protected by statute, and because it has monetary value and is transferable, either by consent of the licensee or by operation of law (in the special statutorily-described sense), *it possesses the qualities of property. Id.* at 385 (emphasis added).

In addition, the Court noted that once granted, the license is protected against arbitrary revocation, suspension or refusal to renew. *Id.* at 384, 192 A.2d 584; *see Blanck, supra,* 38 N.J. at 489, 185 A.2d 862; *N.J.S.A.* 33:1–22, 33:1–31 (Supp.1985).

This same type of analysis was conducted by the Seventh Circuit when faced with the question of whether an Illinois liquor license is "property" for purposes of federal due process. *Reed, supra,* 704 F.2d at 948. In holding that a liquor license is property, that Court looked behind legislative "labels" to evaluate whether the license is property in a "functional sense." The Court focused on the fact that the license is "securely and durably the licensee's." Although good for only one year, it could be revoked only for cause, after notice and hearing, and subject to judicial review, and as the criteria for renewal were undemanding, it could be expected to be renewed as a matter of course. *Id.* at 948–49.

This Court agrees with the sound reasoning of the New Jersey Supreme Court[4] and the Seventh Circuit and con-

---

**4.** The Court is aware that the holding in *Boss Co.,* that a liquor license is property, is limited specifically to the context of section 6321 of the Internal Revenue Code, 40 N.J. at 387–88, 192 A.2d 584; however, the New Jersey Supreme Court in *Boss Co.* appears to have been concerned that its holding not disturb the well-established relationship between state and local government and the licensee, as defined by statute and developed by case law, 40 N.J. at 388,

192 A.2d 584. That Court specifically noted that *N.J.S.A.* 33:1–26 would continue to "protect the liquor license from any device which would subject it to the control of persons other than the licensee" and the sound discretion of the issuing authority to issue, renew or transfer licenses would not be disturbed. *Id.* This Court's holding that a license is property subject to federal due process protection in no way

cludes that a New Jersey liquor license is an interest in property for purposes of federal due process analysis. A liquor license in New Jersey has an economic value both as an income-producing asset [5] and as an asset capable of being transferred in certain statutorily-proscribed circumstances. In addition, although the license is granted only for a term of one year, its suspension or revocation is governed by specific statutory procedures, *N.J.S.A.* 33:1–31, similar to those governing Illinois liquor licenses, and the license is protected against arbitrary suspension, revocation or refusal to renew. *Blanck, supra,* 38 N.J. at 489, 185 A.2d 862.

The Court turns now to the question of whether the referendum process outlined in *N.J.S.A.* 33:1–47.1, by which municipalities may set the hours during which alcoholic beverages may be sold, fails to afford procedural due process to holders of liquor licenses.

*N.J.S.A.* 33:1–47.1 provides that whenever a petition requesting a referendum on any proposed questions concerning the hours between which the sale of alcoholic beverages at retail may be made in a municipality is signed by at least fifteen percent (15%) of the qualified electors of that municipality and is presented to the municipal governing body, the governing body shall adopt a resolution directing the county clerk to place such questions upon the ballot for the next general election. If a certified copy of this resolution is delivered to the clerk not less than thirty days before the general election, the clerk shall place the questions on the ballot.[6] A majority vote on these questions is binding in nature and no further referendum on the same questions may be held for five years. [See Appendix "A" for full text of *N.J.S.A.* 33:1–47.1].

Plaintiffs assert that this referendum process does not comply with federal due process standards for it does not afford them, as licensees with protected property interests at stake, adequate notice of the proposal to restrict their hours of sale or an opportunity to express their views and concerns about the proposed change. Plaintiffs concede that the other method provided by New Jersey statute to fix the hours of sale of alcoholic beverages, *N.J.S.A.* 33:1–40 (1940), which permits a municipal board or governing body to limit such hours by ordinance or resolution, does satisfy procedural due process requirements. (Plaintiffs' brief, at 18).

The referendum process has been applauded as a classic demonstration of "devotion to democracy." *James v. Valtierra,* 402 U.S. 137, 141, 91 S.Ct. 1331, 1333, 28 L.Ed.2d 678 (1971). The Supreme Court in *Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 678, 96 S.Ct. 2358, 2364, 49 L.Ed.2d 132 (1976), in upholding the validity of a referendum process, quoted with favor the following language from the Ninth Circuit decision in *Southern Alameda Spanish Speaking Organization v. Union City, California,* 424 F.2d 291, 294 (1970):

> A referendum, however, is far more than an expression of ambiguously founded neighborhood preference. It is the city itself legislating through its voters—an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest.

The law in New Jersey is well established that initiative and referendum statutes should be liberally construed in order to encourage public participation in municipal affairs in the face of normal apathy and

---

undermines the established state licensing scheme.

**5.** The fact that a liquor license has economic value is not disputed. At trial, plaintiffs' expert witness John Lazarus testified for purposes of demonstrating a diminution in that value that the individual plaintiffs would suffer losses in

income ranging between $1,400 and $2,800 per week as a result of the reduction in the hours of sale of liquor.

**6.** The questions must be followed by an "explanatory statement" explaining the significance of both a "Yes" and a "No" vote.

lethargy in such matters. *Margate Tavern Owners' Ass'n. v. Brown,* 144 N.J.Super. 435, 441, 365 A.2d 1378 (App.Div.1976); *Sparta Tp. v. Spillane,* 125 N.J.Super. 519, 523, 312 A.2d 154 (App.Div.1973), *cert. den.* 64 N.J. 493, 317 A.2d 706 (1974); *Atlantic City Housing Action Coalition v. Deane,* 181 N.J.Super. 412, 418, 437 A.2d 918 (Law Div.1981). It is also clear, however, that this favorable view is subject to and must be construed with governing constitutional and statutory provisions. *Tp. of Sparta, supra,* 125 N.J.Super. at 523, 312 A.2d 154; *see* 5 McQuillan, *Municipal Corporations,* § 16.50 (3d ed. 1969). The right to referendum and initiative in municipal affairs is strictly a statutory and not a constitutional right. *Smith v. Livingston Tp.,* 106 N.J. Super. 444, 453, 256 A.2d 85 (Ch.Div.1969), *aff'd o.b.* 54 N.J. 525, 257 A.2d 698 (1969).

In applying these principles, courts have often held that the particular subject matter of a proposed ordinance is not proper for an initiative or referendum proceeding. *See, e.g., In re Certain Petitions for a Binding Referendum,* 154 N.J.Super. 482, 381 A.2d 1217 (App.Div.1977) (amendments to a comprehensive traffic ordinance were not subject to initiative); *Smith v. Livingston, supra* (amendment to zoning ordinance could not be proposed by initiative); *Sparta Tp., supra* (court disallowed a referendum petition on a zoning ordinance); *Cuprowski v. Jersey City,* 101 N.J.Super. 15 (Law Div.), *aff'd* 103 N.J.Super. 217, 247 A.2d 28 (App.Div.), *cert. den.* 53 N.J. 80, 248 A.2d 433 (1968) (referendum on municipal budget not permitted).

The appropriateness of the subject matter of the instant ordinance—hours of sale of liquor—for resolution through the refer-endum process is not, however, the issue before this Court.[7] Rather, the issue is whether procedural due process is violated when the referendum process is used to limit the hours of sale of liquor, which, in turn, reduces the value of a liquor license. This issue has not been addressed by the New Jersey courts or by the Third Circuit.

Plaintiffs contend that if the Sea Girt governing body had enacted an ordinance which produced the same results as the instant referendum, procedural due process would not have been violated and their property interests in their liquor licenses would have been protected, because they would have received notice of the proposed ordinance and would have had the opportunity through public hearing to challenge the reasonableness of the proposed ordinance. They argue that the referendum process denies them this traditional notice and hearing procedure.

■ Procedural due process, however, does not guarantee a uniform code of procedure. Although the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner, the concept is flexible, calling for procedural protection as dictated by the particular circumstances. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Kahn v. United States,* 753 F.2d 1208, 1218 (3d Cir.1985). In other words, all that is required is "a fair process of decision-making." *Fuentes v. Shevin,* 407 U.S. 67, 81–84, 92 S.Ct. 1983, 1994–96, 32 L.Ed.2d 556 (1972).

■ This Court holds that the referendum process set forth in *N.J.S.A.* 33:1–

7. Indeed, even if this question had been raised, this Court finds nothing inherent in the subject matter of the present ordinance to indicate that the fixing of hours of retail sales of liquor should not be subject to the referendum process. For the most part, the proposed ordinances in the cases discussed above impacted on regional policies. The issue raised in this case is more similar to the issue raised in *Concerned Citizens of Wildwood Crest v. Pantalone,* 185 N.J.Super. 37, 447 A.2d 200 (App.Div.1982). In that case, the question sought to be placed before the voters was an ordinance repealing beach fees. The Court found that no regional policy would be frustrated by repeal of beach fees in Wildwood Crest and consequently held, "[W]e have a local question of a basic policy nature. The issue is long-term in effect. It cannot be fairly deemed highly technical in nature. In short, the matter seems ideally suited to the initiative process." *Id.* at 46–47, 447 A.2d 200. The same can be said of the instant referendum question.

47.1 constitutes a fair process of decision-making. In so holding, the Court is persuaded by the reasoning of the Seventh Circuit in *Philly's v. Byrne*, 732 F.2d 87 (7th Cir.1984) when faced with a due process challenge to a similar liquor referendum.

In *Philly's*, the Seventh Circuit examined the local-option provision of Illinois' Liquor Control Act which permits voters in each precinct in Chicago to vote their precinct completely "dry"; in other words, the precinct, by popular vote, can choose between allowing and not allowing the retail sale of alcoholic beverages within its borders. The Seventh Circuit upheld the referendum process, despite the fact that it totally eliminated liquor licensees' interests in their licenses, holding that this process was "fair" in that it did not permit voters to arbitrarily single out particular liquor businesses, but rather only permitted voters to take action which would apply across-the-board to all liquor licensees. *Id.* at 92. The Court, noting that the voters were acting in a legislative capacity, stated that "notice and opportunity for a hearing are not constitutionally required safeguards of legislative action." *Id.; see also Bi-Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); *Rogin v. Bensalem Tp.*, 616 F.2d 680, 693 (3d Cir.1980). The Court found that the fact that the statute (or statute-like regulation) applied across the board provided a substitute safeguard. *Philly's, supra*, 732 F.2d at 92. Applying these principles to the referendum process before it, the Court concluded:

[A]lthough the appellants did not have notice or an opportunity for a hearing in the sense familiar in adjudicative proceedings, they of course had ample notice of the forthcoming election and an opportunity to compaign against the proposition that the precinct should vote itself dry. *Id.* at 93.

The Seventh Circuit also found the subject matter of the Illinois referendum—the decision to permit or prohibit the sale of liquor—suitable for decision by popular vote. According to the Court,

[N]o national or even regional consensus has emerged with respect to the morality and consequences of alcoholic beverages. It has seemed best in default of consensus to leave the matter to local preference as expressed in the voting booth. Illinois' local-option liquor law is just section 2 of the Twenty-First Amendment writ small. . . . The issue is well within a layman's competence and the small size of the precinct electorate should foster a sense of civic responsibility, each voter knowing that his vote could be decisive. *Id.* at 92.[8]

In this case, the New Jersey state legislature has delegated to each municipality the responsibility for setting the hours of sale of liquor within its borders, either by passage of an ordinance by the local governing body or by majority vote of the citizens of the municipality. Any increase or decrease in the number of hours liquor may be sold will affect the value of the property interests each licensee holds in its liquor license. Accordingly, there must be some procedure or mechanism by which holders of liquor licenses can bring their interests and concerns to the attention of the decision-makers. Pursuant to *N.J.S.A.* 33:1–47.1, the decision-makers are the voters of Sea Girt. The Court finds that they are well suited to make such a decision. They are the individuals who will be affected on a day-to-day basis by the hours of operation of restaurants and taverns. They are capable of understanding the issues raised by a referendum which restricts the hours of sale of liquor. They can balance the problems created by alcohol consumption, such as drunk driving, with the inconvenience of having to travel

---

**8.** Plaintiffs attempt to distinguish *Philly's* from this case by contending that an Illinois liquor license has less value than a New Jersey license. This Court is not persuaded that there is a substantial difference in the value of these licenses. Licenses in both states are granted for one year terms, are easily renewed, may not be suspended or revoked without cause and are subject to restrictions on transferability.

outside their community to purchase liquor. They can understand the economic concerns of the bar and restaurant owners who are members of their business community, as well as the concerns of the community itself which might also suffer a loss in revenues as a result of the proposed change.

In addition, *N.J.S.A.* 33:1–47.1 gives those opposed to a proposed change in the hours of sale of liquor a minimum of 30 days to take their position to the voters. During that time period, proponents and opponents alike have full use of the campaign process. In this case, evidence presented at trial establishes that plaintiffs received actual notice of the proposed change on October 2, 1985, when they were served with a notice of a special meeting of the Sea Girt governing body to be held on October 4, 1985 to consider the petition to place the question of the hours of sale of liquor on the November 5, 1985 ballot. (Defendant's Exhibit 3). That council meeting was held on October 4, 1985. At that time the town council adopted a resolution requesting the County Clerk to place the public question on the ballot. Litigation in the Superior Court of New Jersey followed, challenging the sufficiency of the time between submission of the question to the Clerk and the election date. On October 10, 1985, the Appellate Division ordered the question placed on the ballot. Plaintiffs then campaigned vigorously during the period prior to the election. They placed advertisements in the local newspapers opposing the proposed change in hours, posted signs throughout the municipality and distributed handbills and brochures—in some instances door-to-door. Numerous articles and editorials appeared in the newspapers as well. Plaintiffs made full use of the campaign process to place their position before the voters. Accordingly, the Court holds that the referendum procedure set forth in *N.J.S.A.* 33:1–47.1 constitutes a fair process of decision-making and consequently does not violate procedural due process.

## SUBSTANTIVE DUE PROCESS

Plaintiffs' second claim, although intertwined with their procedural due process claim, is that the result of the November 5, 1985 referendum has impaired the value of their property rights in their liquor licenses without justifiable reason. In other words, plaintiffs contend that their substantive due process rights have been violated because the two-hour reduction in the hours of sale of liquor is an arbitrary and capricious result which bears no relationship to the state's interest in the health and welfare of its citizens. According to plaintiffs, if the local governing body had passed an ordinance reducing the hours of sale of liquor, it would have needed a valid reason to do so. Plaintiffs contend that no such valid reason exists. Therefore, what the legislature could not do by ordinance, it cannot do by popular vote.

Defendants argue in opposition that the state has broad authority to regulate the sale of liquor and, in fact, can go so far as to bar its sale, and that there is a strong presumption in favor of the validity of state regulations, particularly in the area of the liquor industry. Defendants stress the fact that states can change laws even if the changes will diminish the value of established property interests. Defendants conclude that a two-hour reduction in the number of hours liquor can be sold in Sea Girt is a reasonable regulation of the hours of sale of liquor and as such is within the state's police power.

■ Substantive due process requires only that a law shall not be unreasonable, arbitrary or capricious, and that the means selected shall bear a rational relation to the legitimate object sought to be obtained. *Reinfeld, supra,* 94 N.J. at 413, 466 A.2d 563; *U.S.A. Chamber of Commerce v. State,* 89 N.J. 131, 155, 445 A.2d 353 (1982); *Robson v. Rodriguez,* 26 N.J. 517, 522, 141 A.2d 1 (1958). Plaintiffs' argument, that the voters cannot do by referendum what the legislature could not do by ordinance, is based on the following principle enunciated by the Supreme Court in *Eastlake v. For-*

*est City Enterprises, Inc., supra,* 426 U.S. at 676, 96 S.Ct. at 2363.

> If the substantive result of the referendum is arbitrary and capricious, bearing no relation to the police power [public health, safety, morals, or general welfare], then the fact that the voters … wish it so would not save the restriction.

This statement is true enough; however, it does little to advance plaintiffs' position that the result of the November 5, 1985 referendum, the prohibition against sale of alcoholic beverages after midnight, is not rationally related to a legitimate governmental purpose.[9]

■ The substantive result of the referendum in Sea Girt—a majority vote reducing the number of hours during which liquor can be sold—bears a rational relationship to a number of legitimate goals fully discussed in the heated campaign prior to the referendum, including the goals of reducing the problems occasioned by the influx of tourists during the summer season such as vandalism, traffic and parking problems and noise, and reducing the incidents of drunk driving. *See Patch Enterprises, Inc. v. McCall,* 447 F.Supp. 1075 (M.D.Fla.1978) (ordinance prohibiting sale of alcohol in "bottle clubs" between 2:00 a.m. and 7:00 a.m. rationally related to goal of decreasing drunk driving).

Plaintiffs argued at trial that the referendum result was not rationally related to the goal of reducing the cases of individuals driving while intoxicated. To support this, plaintiffs offered the testimony of Chief Jack Manutti, Chief of Police for the Borough of Belmar and President of the Monmouth County Police Chiefs Associa-

tion, who stated that he, and others,[10] opposed the instant referendum based on a belief that a uniform bar closing time among all communities would best promote the goal of lessening the instances of drinking-related accidents. Courts are reluctant, however, to substitute their judgment about social policy for that of the legislature. *Rogin, supra,* 616 F.2d at 689; *see also Seagram & Sons v. Hostetter, supra,* 384 U.S. at 46–47, 86 S.Ct. at 1261–62. As the Third Circuit has noted:

> [T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

*Rogin, supra,* 616 F.2d at 689, citing *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955).

It is undisputed that the Twenty-first Amendment gives the states plenary power to regulate the sale and distribution of liquor, *Reinfeld, supra,* 94 N.J. at 412, 466 A.2d 563, and that this practically limitless power includes the power to set the hours of sale, or indeed to prohibit the sale altogether. *California v. LaRue, supra,* 409 U.S. at 119, 93 S.Ct. at 397; *G. & J.K. Ent. v. Div. of Alcoholic Beverage, supra,* 205 N.J.Super. at 82, 500 A.2d 43, citing *Mazza, supra,* 15 N.J. at 505, 105 A.2d 545 ("as a business attended with danger to the community, [the liquor business] may be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils"). The Borough of Sea Girt pursuant

---

**9.** Plaintiffs rely to a great extent on judicial decisions which are clearly inapplicable to the present case as those cases involved analysis of statutes which impacted on suspect classes or fundamental rights. Such statutes are subject to stricter judicial scrutiny than the instant statute. *See, e.g., Hunter v. Erickson,* 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969) (requirement that ordinances regulating transfer of real estate be approved by popular vote impacted on minority and religious groups); *Kirksey v. City of Jackson,* 669 F.2d 316 (5th Cir.1982) (court examined procedures for at large voting which impacted on minority candidates for public of-

fice). Liquor dealers, however, are not a suspect class, nor is there a fundamental right to sell liquor. *Reinfeld, supra,* 94 N.J. at 412, 466 A.2d 563. Therefore, a simple "rational basis" standard applies to an analysis of liquor regulations.

**10.** A number of other officials and groups opposed the change in hours of sale, including Monmouth County Prosecutor John Kaye, the Monmouth County Board of Freeholders and Mothers Against Drunk Driving.

to *N.J.S.A.* 33:1–47.1 by popular vote has restricted the hours of sale of liquor within its community to between 6:00 a.m. and midnight daily. This Court holds that this result is constitutionally permissible and does not violate principles of substantive due process as it is rationally related to any number of valid health, safety and welfare concerns, including the concerns of reducing such problems caused by the influx of summer tourists as traffic and parking problems, vandalism and noise and reducing the incidents of drunk driving.

## COMMERCE CLAUSE

■ Plaintiffs' third challenge to the constitutionality of *N.J.S.A.* 33:1–47.1 is based on the contention that this referendum, which restricts the hours liquor can be sold in that community, will reduce the number of tourists that choose to visit this seaside community, which in turn, in some uncertain fashion, places an unfair burden on interstate commerce in violation of the Commerce Clause, U.S. Const., Art. 1, § 8. It is unclear whether plaintiffs fear the burden will be placed on other New Jersey resorts to meet the needs of former Sea Girt tourists or on the surrounding states of Pennsylvania and New York as well as the neighboring nation of Canada from which plaintiffs suggest Sea Girt receives a steady influx of tourists. (Plaintiffs' brief, at 36). Regardless of which scenario plaintiffs are attempting to depict, plaintiffs' claim under the Commerce Clause is without merit.

■ Not only does Section 2 of the Twenty-first Amendment give the states broad power to regulate the importation and use of intoxicating liquor within their borders, but Supreme Court decisions also have made it clear that that Amendment creates an exception to the normal operation of the Commerce Clause. *Capital Cities Cable, supra,* 467 U.S. at ——, 104 S.Ct. at 2707, 81 L.Ed.2d at 597; *Craig v. Boren,* 429 U.S. 190, 206, 97 S.Ct. 451, 461–62, 50 L.Ed.2d 397 (1976). In other words, Section 2 reserves to the states power to impose burdens on interstate com-

merce in intoxicating liquor that would be invalid under the Commerce Clause, absent the Amendment. *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 330, 84 S.Ct. 1293, 1297, 12 L.Ed.2d 350 (1964). Although the Amendment does not operate to totally repeal the Commerce Clause where regulation of liquor is concerned, where a state is attempting directly to regulate the use of liquor within its borders, as authorized by Section 2, it is totally unconfined by traditional Commerce Clause limitations. *Capital Cities, supra,* 467 U.S. at —— ——, 104 S.Ct. at 2707–08, 81 L.Ed.2d at 597–98; *Seagram & Sons, supra,* 384 U.S. at 42, 86 S.Ct. at 1259. It is undisputed that states have the power under the Twenty-first Amendment to regulate *the times,* places and manner under which liquor may be imported and sold. *Capital Cities, supra,* 467 U.S. at ——, 104 S.Ct. at 2709, 81 L.Ed.2d at 600.

This case is a clear example of defendants exercising one of these "core" powers. Defendants have used *N.J.S.A.* 33:1–47.1 to set the hours of sale of liquor in the municipality of Sea Girt between 6:00 a.m. and midnight. Even if this time regulation does impact on interstate commerce in some way (no such impact being readily apparent to the Court), plaintiffs have produced no evidence which would require this Court to look beyond the exception to the normal operation of the Commerce Clause created by the Twenty-first Amendment. *E.g., Craig v. Boren, supra,* 429 U.S. at 204–10, 97 S.Ct. at 460–64 (a scheme of invidious discrimination or a significant violation of another constitutional right is required to circumvent this exception to the Commerce Clause); *Capital Cities, supra,* 467 U.S. at ——, 104 S.Ct. at 2707–08, 81 L.Ed.2d at 598 (where state regulation conflicts directly with express federal policy, courts will look beyond this exception to normal operation of the Commerce Clause). Accordingly, *N.J.S.A.* 33:1–47.1 and the referendum conducted on November 5, 1985 pursuant to its provisions do not violate the Commerce Clause.

### ACCESS TO THE BALLOT

Plaintiffs' final argument is that *N.J.S.A.* 33:1–47.1 unconstitutionally restricts their access to the ballot and unfairly proscribes their right to freedom of assembly because it prevents any attempts to alter the results of the referendum for five years. The statute provides in pertinent part:

> Whenever a referendum shall have been had in any municipality pursuant to this section, no further referendum on the same question shall be held therein prior to the general election to be held in such municipality in the fifth year thereafter and so long as such referendum remains effective, all ordinances, resolutions or regulations inconsistent with the result of such referendum shall have no effect within such municipality.

In light of this restriction, plaintiffs assert that they may not place the question of hours of sale of alcoholic beverages on the ballot until November, 1990.

In support of their claim, plaintiffs rely primarily on the following broad general principle enunciated by the federal District Court of the Northern District of Illinois in *Georges v. Carney*, 546 F.Supp. 469 (N.D. Ill.1982), *aff'd* 691 F.2d 279 (7th Cir.1982):

> [W]here ballot restrictions are so burdensome as to make access virtually impossible, the underlying fundamental right of freedom of association is impaired. Any injury of that magnitude clearly requires that the State demonstrate a compelling interest, served in the least restrictive manner.

*Id.*, 546 F.Supp. at 475.

It is defendants' position that the five-year restriction on resubmission of referendum issues to a vote is constitutionally permissible because it does not impact on a fundamental right and it is not an irrational or unreasonable regulation.

It is a well settled principle that if a case may be decided on either statutory or constitutional grounds, the court, for sound jurisprudential reasons, will inquire first into the statutory question. *Harris v. McRae*, 448 U.S. 297, 306, 100 S.Ct. 2671, 2682, 65 L.Ed.2d 784 (1979). In light of this principle, the initial question before this Court is whether the five-year restriction in *N.J.S.A.* 33:1–47.1 prohibits plaintiffs from placing a referendum question on the hours of sale of liquor in Sea Girt on the ballot during the next five years.

This question has not been addressed by the New Jersey courts. The statute provides that "[w]henever a referendum shall have been had in any municipality pursuant to this section, no further referendum *on the same question* shall be held" for the next five years. *N.J.S.A.* 33:1–47.1 (emphasis added).

The referendum question which appeared on the ballot in the November 5, 1985 election asked:

> Shall the hours of sale between which alcoholic beverages at retail may be made in the Borough of Sea Girt be 6:00 A.M. through 12:00 midnight, Monday through Sunday?

That question was answered affirmatively by the voters. Therefore, it would not be necessary for that same question to appear on the ballot again. If, however, the voters had answered no to that question, the restriction in *N.J.S.A.* 33:1–47.1 would prevent *that same question* from being placed on the ballot again for five years. This Court does not construe the instant restriction, however, to prevent a *different question* from appearing on the ballot.

In reaching this conclusion, the Court is persuaded by the decision of the New Jersey Law Division in *Young v. Byrne*, 144 N.J.Super. 10, 364 A.2d 47 (Law Div.1976) when faced with an analogous statutory provision. In that case, the Court was asked to construe a section of the New Jersey Constitution, entitled "Resubmission of rejected amendments," *N.J. Const.*, Art. 9, ¶ 7 (1971), which provides:

> If at the election a proposed amendment shall not be approved, neither such proposed amendment nor one to effect the same or substantially the same change in the Constitution shall be submitted to the

people before the third general election thereafter.

In *Young,* an amendment, which proposed casino gambling statewide, was defeated in 1974. Two years later, a second amendment was proposed which would permit casino gambling in Atlantic City exclusively. In deciding that these proposed amendments were not designed to affect the "same or substantially the same" change, the Court held that the word "same" meant "identical, not different or other." *Id.* at 17, 364 A.2d 47. In applying this definition to the instant statutory language, only "identical" questions are prohibited from placement on the ballot for a period of five years. Therefore, plaintiffs would not be precluded from placing a different question on the ballot. Accordingly, no constitutional claim remains for this Court to decide.

## CONCLUSION

Although plaintiffs, as holders of retail liquor licenses, have protected property interests in those licenses for purposes of the due process clause of the Fourteenth Amendment, *N.J.S.A.* 33:1–47.1 which permits the hours of sale of liquor to be set by popular vote does not violate plaintiffs' procedural or substantive due process rights; nor does it offend the principles of the Commerce Clause. In addition, as the statute's five-year restriction on resubmission of referendum questions to a vote only restricts resubmission of the same questions, it is not necessary for the Court to address plaintiffs' final constitutional claim that the prohibition impermissibly restricts their access to the ballot. Accordingly, defendants are entitled to judgment.

## APPENDIX A

### 33:1–47.1. Municipal referendum on hours of retail sales

Whenever a petition, signed by at least fifteen per centum (15%) of the qualified electors of any municipality as evidenced by the total number of votes cast at the then next preceding general election, held for the election of all of the members of the General Assembly in such municipality, shall be presented to the governing board or body thereof, requesting a referendum on any proposed questions as to whether the hours between which the sale of alcoholic beverages at retail may be made in such municipality on week days, Sundays, either or both, shall be fixed as provided in such petition, which questions shall be specifically and separately set forth in the petition, such governing board or body shall adopt forthwith a resolution directing the clerk of the county in which such municipality is situated to print such question or questions stated in the petition pursuant to Title 19, Elections, hereinafter referred to as the "general election law," upon the official ballot to be used in such municipality at the next ensuing general election. Thereupon the clerk or secretary of such governing board or body shall forthwith deliver to such county clerk a certified copy of such resolution. If such copy shall be delivered to such county clerk not less than thirty days before such general election, he shall cause such question or questions to be printed in an appropriate place on the ballot to be used in such municipality at the next ensuing general election, pursuant to the general election law, and shall cause to be printed on the ballot, immediately below the printed question or questions the following:

"Explanatory Statement—A 'Yes' is a vote to permit sales only within the hours set forth in the question or questions printed above. A 'No' vote is a vote against changing the hours during which sales of alcoholic beverages are now permitted in this municipality," and thereupon all proceedings with respect to the referendum on such question or questions shall be subject to and governed by the general election law as in other cases of the submission of public questions to the electorate.

If a majority of the legal voters shall vote affirmatively on the question of whether the hours of sale shall be fixed in the manner set forth in such question or questions, the clerk of the governing board or body of such municipality shall forth-

with in writing notify the commissioner and municipal board, if any, of the action taken by the legal voters of such municipality and thereafter the retail sale of alcoholic beverages may be made only within the hours fixed by such referendum. Such sale at any other time within such municipality shall be unlawful and constitute a violation of this chapter.

If a majority of legal voters voting upon such question or questions shall vote in the negative on the question of whether the hours of sale shall be fixed in the manner set forth in such question or questions, the clerk of the governing board or body of such municipality shall forthwith in writing notify the commissioner and municipal board, if any, of the action taken by the legal voters of such municipality and thereafter the hours between which the sale of alcoholic beverages at retail may be made may be regulated as theretofore in such municipality.

No petition under this section shall be received by the governing board or body while any other petition covering the same subject matter which has theretofore been presented hereunder has not been voted upon.

Whenever a referendum shall have been had in any municipality pursuant to this section, no further referendum on the same question shall be held therein prior to the general election to be held in such municipality in the fifth year thereafter and so long as such referendum remains effective, all ordinances, resolutions or regulations inconsistent with the result of such referendum shall have no effect within such municipality.

Amended by L.1945, c. 259, p. 786, § 1; L.1948, c. 20, p. 79, § 5; L.1949, c. 296, p. 905, § 5.